MUSKOGEE BRIDGE COMPANY, INC. *v.* Cheryl A. STANSELL and Samantha Stansell, by Her Next Friend, Cheryl A. Stansell, and Patricia Sunday Lawson

92-441                                              842 S.W.2d 15

Supreme Court of Arkansas.
Opinion delivered November 16, 1992
[Rehearing denied December 21, 1992.]

*Davis, Cox & Wright*, by: *Walter B. Cox* and *Tim E. Howell*, for appellant.

*Lingle & Corley*, by: *James G. Lingle*, for appellees Cheryl A. Stansell and Samantha Stansell by Her Next Friend, Cheryl A. Stansell.

*Odum, Elliott & Winburn*, by: *Bobby Lee Odom* and *J. Timothy Smith* and *Roy & Lambert*, by: *Brian P. Wood*, for appellee Patricia Sunday Lawson.

ROBERT L. BROWN, Justice. The appellant, Muskogee Bridge Company, Inc., raises five points for reversal in this appeal from a jury verdict finding it eighty percent at fault for an automobile accident which resulted in the death of Jim Lawson, husband of appellee Patricia Lawson, and injury to Patricia Lawson's son, Justin Lawson, and to appellees Samantha and Cheryl A. Stansell. The points raised are without merit, and we affirm.

On the morning of May 11, 1985, Jim Lawson of Springdale prepared to go to work at George's egg plant north of town and discovered that his truck would not start. He woke his wife, Patricia Lawson, and asked her to drive him to work. She agreed, placed the couple's two-year-old son, Justin, in a child safety seat in the right-rear passenger seat of her car, and they left for the plant. Jim Lawson was expected to report for work at 7:00 a.m.

Prior to this time, Muskogee Bridge, an Oklahoma corporation, contracted with the Arkansas State Highway Commission to embark on a bridge construction project involving two bridges on U.S. Highway 71 just north of Springdale. The work was to be done in accordance with Highway Commission plans and specifications and under supervision of Highway Department personnel. A state-approved subcontractor, McClinton-Anchor Company, was to do the paving and asphalt work, also under Highway Department supervision.

At approximately 6:45 a.m., while still in Springdale, Patricia Lawson was heading north toward Rogers on U.S. Highway 71-Business. She approached the bridge construction area where Muskogee Bridge had closed the outside lanes on the bridge and permitted traffic only in the two inside lanes. Pylon barriers narrowed the road to a single lane leading north to the bridge. No employee of Muscogee Bridge was present at the time to direct traffic. No flashing arrow board or dip or bump signs were in place to warn drivers of danger.

Patricia Lawson, who was unfamiliar with the route, was exceeding the speed limit when she approached the bridge construction. The road surface for the bridge was higher due to resurfacing. This caused a bump as you entered the construction area and a drop-off after you crossed the bridge on the north side. Estimates of her speed ranged from forty to sixty-five miles an

hour in a thirty-mile-per-hour zone at the construction site. At some point in the vicinity of the bridge construction, she lost control of the vehicle. Her skid and slide marks on the pavement began fifty to sixty feet from the end of the bridge construction according to Officer Kenneth Watson of the Springdale Police Department. Her car then jumped the median, crossed into the southbound lane, and crashed into an automobile driven by Cheryl Stansell and occupied by her daughter, Samantha Stansell. The impact destroyed the cars, killed Jim Lawson, and injured the appellees and their children.

Cheryl and Samantha Stansell filed a complaint in the Washington County Circuit Court, charging negligence on the part of both Muskogee Bridge and Patricia Lawson. Among the allegations asserted against Muskogee Bridge were failure to provide adequate warnings and "[l]eaving an abrupt dip or bump in the roadway which created an unreasonably dangerous condition." Patricia Lawson counterclaimed against Cheryl Stansell and cross-complained against Muskogee Bridge, advancing the same allegations against it that the Stansells made in their original complaint.

The case was tried before a jury over two days. The jury returned a verdict finding Muskogee Bridge eighty percent at fault in causing the accident and appellee Patricia Lawson twenty percent at fault. The jury awarded Cheryl Stansell, Samantha Stansell, and Justin Lawson the amounts of $25,000, $500, and $750,000, respectively.

## I. SUBSTANTIAL EVIDENCE

Muskogee Bridge first contends that the jury's verdict in favor of the appellees was founded solely upon sheer speculation and sympathy rather than upon substantial evidence. Substantial evidence is defined as that which is of sufficient force and character to compel a conclusion one way or another; it must force or induce the mind to pass beyond suspicion or conjecture. *Derrick* v. *Mexico Chiquito, Inc.*, 307 Ark. 217, 819 S.W.2d 4 (1991); *Wal-Mart Stores, Inc.* v. *Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991). We have held that we must affirm if there is substantial evidence to support the judgment below. *Derrick* v. *Mexico Chiquito, Inc., supra; Handy Dan Improvement Center, Inc.* v. *Peters*, 286 Ark. 102, 689 S.W.2d 551 (1985).

■ In testing whether the evidence is substantial on appellate review, we need only consider the evidence on behalf of the appellee and that part of the evidence that is most favorable to the appellee. *Derrick* v. *Mexico Chiquito, Inc., supra; Love* v. *H. F. Construction Co.*, 261 Ark. 831, 552 S.W.2d 15 (1977). The appellees asserted these instances of negligence: (1) the creation of a funnelling effect into the bridge with the reduction of four lanes to two lanes in a high-traffic, no-bypass area; (2) the creation of a "speed bump" at the south end of the bridge and a drop-off of several inches at the north end which caused Patricia Lawson to lose control; (3) the decision of Muskogee Bridge not to expend funds to pay for the installation of flashing arrow boards or additional warning signs; (4) the failure of Muskogee Bridge to comply with its contractual obligation to take "needed actions" to ensure the "safety of the public."

The following evidence presented at trial supports a finding of negligence on the part of Muskogee Bridge:

*Mike Webb*, secretary-treasurer of Muskogee Bridge Company, conceded that "[w]e were responsible for traffic signs, yes, sir." He acknowledged that there were no signs in place indicating either a "bump" or a "dip."

*Leon Brewer* of the Arkansas Highway Department testified that in a letter he wrote denying Muskogee Bridge's request for a flashing arrow panel he never said that such signs were not necessary but merely that they were not required by the Highway Department's standard drawings. He insisted that the drop-off on the north end of the bridge could only have been an inch-and-a-half according to project specifications, but he agreed that if something there created the effect of a speed bump then something "was not right."

*Don Hooten*, Muskogee Bridge's project supervisor, admitted that the drop-off, which he contended was an inch-and-a-half as set forth in the project specifications, had not been measured. He also stated that flashing signs are typically used in "high traffic areas" and conceded that no "bump" or "dip" sign had been set up.

*Officer Clyde Martin* of the Springdale Police Department testified that he patrolled the area on a regular basis and

estimated the drop-off on the north end of the bridge to be "anywhere from four to eight inches." He said that the drop-off was there both before and after the accident.

*Officer Herschel D. Hardin* of the Springdale Police Department stated that he had been on the bridge as many as a dozen times or more per eight-hour shift during the period of construction. He said regarding the drop-off: "It reminded me of a speed bump, the severity of the height of it which could cause a care to lose control going over it and maybe not being too familiar with it." He declared the condition to be "dangerous" because of the ramp on either side of the bridge. He estimated the drop-off at four to six inches.

*Officer Kenneth Watson* of the Springdale Police Department, who also patrolled the area with considerable frequency, recalled that "[I]t was a pretty good rise onto the bridge and then again going off of the bridge in either direction." He described the sensation of going over the ramp as "more like a speed bump than most anything else" and a "pretty good jump." On one occasion, when he was in pursuit of a suspect in a shooting incident at a speed of more than one hundred miles an hour, his vehicle became "airborne" after crossing the bridge.

*Teresa Jo Nagles*, a teacher and volunteer fire fighter who arrived on the scene after being summoned by beeper, said that the bridge construction area was "pretty bumpy." She also remarked that "if I hit it hard enough going faster than thirty miles an hour it would jar my car."

*Loretta Feagin*, an eyewitness to the accident, testified that she observed Patricia Lawson's car in the narrowed, two-lane area "weaving back and forth from one side to the other, back and forth. She was fighting it. She couldn't hold it straight." Loretta Feagin estimated Patricia Lawson's speed at forty miles an hour.

Muskogee Bridge's contract with the Highway Commission provided in a section titled "Safety; Accident Prevention" that:

> The contractor shall provide all safeguards, safety devices and protective equipment and take any other needed actions, on his own responsibility, or as the State Highway Department contracting officer may determine, reasonably necessary to protect the life and health of employees on

the job and the safety of the public and to protect property in connection with the performance of the work covered by the contract.

In a special provision entitled "Traffic Control Devices for Construction Zones," the contract stated:

It will be the responsibility of the contractor to furnish all other signs, barricades, channelization devices or temporary traffic control other than those covered above. These types of traffic control devices are those required for temporary hazard protection , i.e., . . . drop offs . . . .

The evidence outlines above was substantial and sufficient to allow a jury to conclude that the condition of the construction area with the drop-off of four to eight inches and the absence of warnings of the drop-off, though not specifically required under the Highway Commission's plans and specifications, constituted both negligence and a proximate cause of the accident. The jury had the right to believe or disbelieve all or any part of the testimony and was in a superior position to judge the credibility of the witnesses. *Boyd* v. *Redick*, 264 Ark. 671, 573 S.W.2d 634 (1978). This was a decision in which circumstantial evidence obviously played a significant role, because Patricia Lawson was unable to recall what happened after the crash. Nevertheless, any material fact in issue may be established by circumstantial evidence. *MFA Mutual Ins. Co.* v. *Pearrow*, 245 Ark. 795, 434 S.W.2d 269(1968); *see also Interstate Freeway Services, Inc.* v. *Houser*, 310 Ark. 302, 835 S.W.2d 872 (1992). The fact that evidence is circumstantial does not render it insubstantial as the law makes no distinction between direct evidence of a fact and circumstances from which a fact can be inferred. *Thomas* v. *Allstate Ins. Co.*, 27 Ark. App. 27, 766 S.W.2d 31 (1989). We hold that the evidence was sufficient to support the verdict and judgment.

## II. SOVEREIGN IMMUNITY

For its second point, Muskogee Bridge argues that it may not be held liable for negligence arising out of the requirements of its contract with the Highway Commission, the reason being that it was performing work for a sovereign in accordance with the sovereign's specifications. The circuit court instructed

the jury as follows on the effect that performance under a government contract has on negligence:

> A contractor who performs in accordance with the terms of this contract with a governmental agency involved and under the direct supervision of that agency is not liable for damages resulting from that performance. However, a contractor is liable for damages resulting from negligence in the performance of the contract.

Muskogee Bridge then requested the following instruction which the court refused to give:

> . . . you are instructed that if Muscogee Bridge Company complied with the plans and specifications of its contract and committed no negligent acts apart from its work pursuant to the contract, then Muskogee Bridge cannot be held liable for any injuries and damages resulting from its work done in compliance with those plans and specifications.

Muskogee Bridge's proffered instruction is confusing as far as what is meant by "negligent acts apart from its work pursuant to the contract." Moreover, the law was correctly stated by the instruction given. Accordingly, the circuit court did not abuse its discretion in refusing to give the proffered instruction. *See Wal-Mart Stores, Inc.* v. *Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991).

## III. DIRECTED VERDICT

Muskogee Bridge moved for a directed verdict based on its contentions 1) that it was entitled to immunity under the terms of its contract with the Highway Commission; 2) that the jury would have to engage in sheer speculation about whether the bump caused Patricia Lawson to lose control; 3) that all the paving work was performed by McClinton-Anchor, a state-approved subcontractor; and 4) that no evidence was adduced to show that a reasonably careful contractor would have put up any additional warning signs.

A motion for a directed verdict should be granted only if there is no substantial evidence to support the verdict. *Bank of Malvern* v. *Dunklin*, 307 Ark. 127, 817 S.W.2d 873

(1991). We have already addressed the substantial evidence and immunity points. Suffice it to say that the mere fact that a subcontractor performed the work in question does not automatically relieve the general contractor of all liability. *See, e.g., Construction Advisors, Inc.* v. *Sherrell,* 275 Ark. 183, 628 S.W.2d 309 (1982). The Highway Commission contract also addresses this point when it says that subcontracting or assignment does not "relieve the contractor of any responsibility for the fulfillment of the contract." Under the contract Muskogee Bridge was to provide safeguards to protect the public from dangerous conditions. But apart from the agreement, Muskogee Bridge, as general contractor, had a duty to protect the public against unreasonably dangerous conditions on the job site. Furthermore, the appellees were not required to present evidence of what a reasonably careful contractor would do. The circuit court correctly refused to direct a verdict.

## IV. OFFICER OPINION

At trial, Officer Clyde Martin testified that he had been trained in accident investigation and that he had investigated approximately one hundred accidents a year. He then testified on direct examination by appellee Cheryl Stansell's attorney regarding contributing factors to the accident:

Q. Do you have contributing factors to Mrs. Lawson?

A. On Mrs. Lawson I have two contributing factors. One was the wrong side of the road as a result of crossing the median and failure to maintain control of the vehicle.

There was no objection to this testimony. Later, on cross-examination by Patricia Lawson's attorney, Officer Martin was asked about the bridge as a contributing factor:

Q. In your opinion, Officer Martin, was the bridge a contributing factor to this accident?

MR. COX: Your Honor, I am going to object. There is no foundation and it is expression of an opinion. There is not sufficient foundation.

MR. ROBINSON: Your Honor, under Rule 702 his knowledge, experience and training help determine a fact in in issue that goes to causation and not the ultimate issue

of negligence. My asking Officer Martin's opinion does not mandate a legal conclusion.

THE COURT: I'm going to allow him to testify over your objection as to the bridge. He has testified to his memory of it. Your objection will be noted, Mr. Cox. Ask the question again.

Q. [Mr. Robinson continuing:] In your opinion, sir, was the bridge a contributing factor to this accident?

A. The bridge or the construction itself:

Q. The drop off, the rise in the bridge and the drop off areas, sir.

A. Yes, sir, I would say it was one of many contributing factors.

Under subsequent questioning by Muskogee Bridge, Officer Martin testified that he did not list the bridge construction as a contributing factor in his report and could not say what caused Mrs. Lawson to lose control of her vehicle. He added under cross examination by Lawson that the drop-off could have been a contributing factor. But on re-cross examination by Muskogee Bridge, he admitted that he could only say it was "a possible cause" of the accident.

The next day, the circuit court reconsidered its previous ruling, admitted it had erred, and admonished the jury not to consider Officer Martin's testimony on contributing factors. The court then struck the testimony. Muskogee Bridge asked for a mistrial, but the motion was denied.

The decision to grant a mistrial lies within the discretion of the trial court. *Schroeder* v. *Johnson*, 234 Ark. 443, 352 S.W.2d 570 (1962). Here, the circuit court, on the following day, admitted that it had erred in allowing Officer Martin to testify regarding contributing factors to the accident. We agree that this was error. The burden, however, is on the appellant to demonstrate that the circuit court committed prejudicial error. Error which does not result in prejudice is not reversible. *Robinson* v. *Abbott*, 292 Ark. 630, 731 S.W.2d 782 (1987).

Muskogee Bridge has not demonstrated that it was

124

prejudiced. Officer Martin, though initially giving an opinion on contributing factors, later hedged in his testimony and said he could not say that the bridge construction was a cause of the accident. It was only a *possible* factor. Furthermore, the circuit court admonished the jury not to consider his testimony on contributing factors. Had the police officer been more demonstrative in assessing blame and the court not admonished the jury, our attitude would be different. But here the circuit court made the appropriate decision to admonish the jury and go forward with the trial.

## V. LAY TESTIMONY

Teresa Nagles testified that she crossed the bridge three or four times a week and that she experienced a jarring bump. She also testified that she told her father, jokingly, that she would sue the City if her wheels were knocked out of line. Her testimony was relevant under A.R.E. Rule 401 because it had a tendency to make the existence of the fact of a jarring bump more probable. After an objection from Muskogee Bridge, she limited her testimony to the time frame immediately before the accident. The circuit court committed no error in admitting this testimony.

Affirmed.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. Because I can find no substantial evidence in this record of a defect in the bridge construction which was the proximate cause of the collision between the Lawson and the Stansell vehicles, I would reverse the judgment entered on the verdict. It is not enough that the bump *could have* caused the Lawson vehicle, travelling at a high rate of speed, to swerve and lose control, the law sensibly requires causation in fact. *Missouri Pacific Railroad Co.* v. *Remel*, 185 Ark. 598, 48 S.W.2d 548 (1932). That proof is simply lacking in this case.