Richard AVERY and Carroll Truck Lines *v.* Willie WARD, Jr.

95-880                                                934 S.W.2d 516

Supreme Court of Arkansas
Opinion delivered December 16, 1996

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Julia L. Busfield*, for appellants.

*J.L. Wilson & Associates*, by: *J.L. Wilson*, for appellee.

BRADLEY D. JESSON, Chief Justice. The appellants, Richard Avery and Carroll Truck Lines, appeal from a judgment against them in the amount of $100,000. They advance four bases for reversal: (1) the trial court erred in denying their motion for directed verdict because there was no substantial evidence to support the verdict; (2) the trial court erred in admitting testimony and medical bills of appellee Willie Ward, Jr., without a proper foundation; (3) the trial court erred in denying Avery's motion for a new trial based on error in the assessment of damages; and (4) the trial court erred in refusing to allow Avery to use a peremptory challenge to strike a prospective juror. We agree with appellants' second contention and reverse and remand for a new trial.

On April 26, 1986, Richard Avery was an employee of Carroll Truck Lines and was driving a tractor-trailer truck. Ward testified that he had slowed his pickup truck to allow a car ahead of him to turn when he was hit from behind by Avery's truck. As a result of the collision, a screwdriver fell off either Ward's dashboard or the truck seat and punctured him on his ankle, causing infection and an abscess to develop. He also claimed back and neck injuries.

Ward's wife, Betty Ward, contacted Dr. Matthew Wood, his primary physician, and scheduled an appointment for some eight to ten days after the incident. Ward was hospitalized on May 13, 1986, and remained there for sixteen days. At the hospital, Ward fell while trying to leave his bed to go to the bathroom. He experienced a hernia, which led to an operation. His total medical bill for the hospital stay was $7,951.63. Ward, who had previously suffered from diabetes, hypertension, and back problems, incurred additional medical expenses while in the hospital. During his sixteen-day stay, he was tested for hemorrhoids and a rash and received ophthalmology and urology examinations.

Ward sued Avery and Carroll Truck for negligence and sought to collect on all medical expenses. Following trial, the jury returned a general verdict in Ward's favor in the amount of $100,000. Subse-

quently, the trial court refused to grant a motion for a new trial based in part on the improper admission into evidence of certain medical expenses.

## I. Sufficiency of the Evidence

Avery and Carroll Truck first contend that there was no substantial evidence to support the verdict. We disagree. The appellants correctly state our standard of review for denial of a directed verdict. A directed verdict for a defendant is proper only when there is no substantial evidence from which the jurors as reasonable individuals could find for the plaintiff. *Martin* v. *Rieger*, 289 Ark. 292, 711 S.W.2d 776 (1986), *quoting St. Louis S. W. Ry. Co.* v. *Farrell*, 242 Ark. 757, 416 S.W.2d 334 (1967). Substantial evidence is that which is of sufficient force and character that it will compel a conclusion one way or the other. *Young* v. *Johnson*, 311 Ark. 551, 845 S.W.2d 510 (1993); *Derrick* v. *Mexico Chiquito, Inc.*, 307 Ark. 217, 819 S.W.2d 4 (1991); *Kinco, Inc.* v. *Schueck Steel, Inc.*, 283 Ark. 72, 671 S.W.2d 178 (1984). Evidence introduced by the plaintiff, together with all reasonable inferences therefrom, is examined in the light most favorable to the plaintiff when a motion for directed verdict is made by the defendant. *See Sanford* v. *Ziegler*, 312 Ark. 524, 851 S.W.2d 418 (1993); *Muskogee Bridge Co.* v. *Stansell*, 311 Ark. 113, 842 S.W.2d 15 (1992).

We will not sustain a verdict that is based on speculation and conjecture. *Muskogee Bridge Co.* v. *Stansell, supra.* Here, however, that is not the case. Ward testified that he had slowed and signaled and that Avery's tractor-trailer rig ran into the back of his pickup truck. There is certainly sufficient proof, based on Ward's testimony, that Avery was not keeping a proper lookout and, as a result, was negligent. The trial court appropriately denied the motion for a directed verdict and allowed the matter to go to the jury for determination.

## II. Foundation for Medical Bills

Avery and Carroll Truck next claim that there was error in admitting medical records and testimony into evidence. They contend that Ward suffered from back and neck pain before the accident as well as a recurring ulcerated condition on his ankle. They further claim that there was no causal connection between the automobile accident and the various medical treatments he received while in the hospital, and that the jury was inappropriately permit-

ted to consider medical expenses as damages without a proper foundation being laid.

A party seeking medical damages has the burden of proving the reasonableness and necessity for that party's medical expenses. *Bell* v. *Stafford*, 284 Ark. 196, 680 S.W.2d 700 (1984). In that case, we discussed the basic principles underlying the admission of medical evidence:

> Our decisions recognize a distinction between proof of reasonableness and proof of necessity. We have held that evidence of expense incurred in good faith is some evidence that the charges were reasonable. *However, evidence of expense incurred alone is not sufficient to show that charges were causally necessary.* Yet, the testimony of the injured party alone, in some cases, can provide a sufficient foundation for the introduction of medical expenses incurred. For example, if a litigant suffered a specific injury in an accident and was immediately taken to a hospital emergency room for treatment of only that specific injury, the injured party's testimony would be sufficient to establish the necessity of the medical expense as a result of the accident. *However, expert testimony would normally be required to prove the necessity of the expense when . . . expenses for hospital tests were incurred many months after the accident, none of the physicians in attendance immediately after the accident referred the litigant either to the admitting doctor or to the hospital, and the expenses on their face do not appear to be related to the accident.*

284 Ark. at 199 (emphasis added).

Avery and Carroll Truck first complain that Ward's ulcerated ankle was a preexisting and recurring condition. The medical testimony of Dr. Larry Burke, a vascular surgeon, and Dr. Nicholas Economides, a plastic and reconstructive surgeon, who were two of Ward's treating physicians, substantiated this. As a result, the appellants question whether the falling screwdriver merely exacerbated Ward's prior condition. Moreover, they underscore that even Ward could not be certain that the vehicular accident caused his ulcerated condition to worsen.

The fact that Ward was a diabetic, suffered from hypertension, had a history of back problems, and had a prior ulcer on his ankle that recurred from time to time does not rid the appellants of

liability. It simply means that Ward qualified as an "eggshell plaintiff," that is, one who was susceptible to enhanced injury by virtue of an existing condition. *See Primm v. U.S. Fidelity and Guaranty Ins. Corp.*, 324 Ark. 409, 922 S.W.2d 319 (1996). Furthermore, Ward testified that the rear-end collision "shook me up pretty bad and knocked everything off the dashboard and everything off the seat onto the floor." He added that after the accident; his back and neck were hurting and "then this screwdriver object had fallen onto [his] right leg and bumped [his] left leg." Ward testified that the screwdriver punctured his leg. He stated that after the accident, his wife washed, salved, and bandaged his leg and that his back was "steadily hurting" and got worse. He told both Dr. Economides and Dr. Burke that the ulcerated condition on his leg was due to the accident.

We have held that matters of causation are questions of fact for the jury to decide. *See, e.g., First Commercial Trust Co. v. Rank*, 323 Ark. 390, 915 S.W.2d 262 (1996); *see also Catlett v. Stewart*, 304 Ark. 637, 804 S.W.2d 699 (1991). The same holds true for matters of credibility. *Diamond State Towing Co. v. Cash*, 324 Ark. 226, 919 S.W.2d 510 (1996). Avery and Carroll Truck argue long and hard, as they did at trial, that the element of causation is missing with respect to the medical treatment for Ward's back, neck, and leg. We conclude, nonetheless, that an adequate foundation was laid for the treatment of these conditions and that ultimately the question of causation was one for the jury. There was no reversible error committed on this point.

We reach a different conclusion regarding the hernia operation performed on Ward while he was hospitalized. Avery and Carroll Truck question the causal relationship of these medical expenses to the accident. Ward testified regarding the hernia:

> The hernia happened to me while I was in the hospital. Whether it had any bearing on this accident or not, I don't know. I know it happened in the hospital. ... [I] didn't fall on the floor, I eased down, but I mean, I had to go down. I couldn't stand up. ... I got out of bed, and it hurt me so, I just went on to the floor, and they came and picked me up.

At the close of Ward's evidence, Avery and Carroll Truck moved for a directed verdict on the sufficiency of the evidence and a partial directed verdict on the failure to prove medical bills with

reasonable certainty. They asserted that only a few expenses by Dr. Economides were sufficiently proved and tied into the accident. They specifically complained about the hernia expenses, which included operating room costs, anesthesia and recovery room fees, and an anesthesiologist bill, and totalled $971.40. The trial court, in denying the motion for a partial directed verdict, admitted that it did not remember any testimony from the treating physicians on the hernia and was concerned about how one could separate out the costs related to the hernia from the other medical expenses. It concluded that the matter was a jury question.

■ We find the Restatement of Torts to be instructive on the hernia issue. It is clear that a negligent actor is only responsible for additional bodily harm resulting from the normal efforts of those providing medical treatment as reasonably required for the original bodily injury. *Restatement (Second) of Torts*, § 457 (1965). An illustration under comment (e) to § 457 states that a hospitalized person who elects to have a hernia repaired which is unrelated to the accident cannot do so at the expense of the negligent actor.

Section 460 of the Restatement of Torts, however, provides:

If the negligent actor is liable for an injury which impairs the physical condition of another's body, the actor is also liable for harm sustained in a subsequent accident which would not have occurred had the other's condition not been impaired, and which is a normal consequence of such impairment.

*Restatement (Second) of Torts*, § 460 (1965). We agree with Avery and Carroll Truck that there is insufficient proof that the hernia operation was in any wise a normal consequence of the original impairment. No medical testimony linked the hernia to the accident. Certainly, the testimony of Ward himself does not support any connection. A proper foundation was not laid for the consideration of these expenses.

Turning to the remaining medical expenses, according to Ward's testimony, he was examined for everything from a hernia to hemorrhoids while he was in the hospital. In fact, Ward, who had a lengthy medical history, testified that "[t]hey checked me for everything. Dr. Wood didn't let nothing go. That's why I go to him." According to Betty Ward, while in the hospital, her husband was seen by Dr. Frank McGrew for hypertension, Dr. Robert Kaplan

for complaints of a rash, Dr. Robert Hamilton for an ophthalmology evaluation, and Dr. Richard Pearson for a urology exam.

Neither Ward nor any expert testified that the tests for hemorrhoids, hypertension, and a rash were related to his being struck by a screwdriver in the leg. There was no foundation laid to establish that ophthalmology and urology studies were causally necessary. There was no testimony that a cardiology bill, dated nearly a year after the accident, bore the requisite causal relationship. While Ward argues in his brief that Dr. Wood made the referrals for these services, Dr. Wood did not testify. While Ward offered expert testimony concerning the treatment of his skin ulcers, the jury heard no expert testimony regarding the other treatments Ward received. Significantly, Dr. Burke testified that he could have treated Ward for his skin ulcers as an outpatient.

In this age of "managed care," a sixteen-day hospital stay is lengthy for any ailment. We have no medical testimony as to why Ward was admitted to the hospital in the first place. Likewise, there is no medical evidence as to how much of his stay was attributed to the injuries from the accident and how much was for the hernia and other unrelated tests and treatment. To the extent that the hospital bill may have included these unrelated expenses, we must conclude that it was erroneously admitted.

The issue then becomes whether medical expenses erroneously admitted can be separated from the valid medical treatment received. Ward submitted medical expenses for the hospital stay and subsequent treatment totaling between $13,000 and $14,600 and $236.25 for property damage to his pickup truck. The jury was instructed on damages for pain, suffering, and mental anguish and returned a general verdict for $100,000.

A plaintiff may prevail in a personal-injury case upon proof "that he sustained damages, that the defendant was negligent, and that such negligence was the cause of his damages." *Mahan* v. *Hall*, 320 Ark. 473, 477, 897 S.W.2d 571 (1995). The law imposes on the plaintiff the burden of establishing a causal nexus between his injuries and the defendant's negligence. *Wheeler* v. *Bennett*, 312 Ark. 411, 419-20, 849 S.W.2d 952 (1993); *Bell* v. *Stafford*, 284 Ark. 196, 199, 680 S.W.2d 700 (1984). Reversible error occurs when a jury is permitted to award damages on the basis of injuries that are not caused by the defendant. *Jonesboro Coca-Cola Bottling Co.* v. *Young*,

198 Ark. 1032, 1036, 132 S.W.2d 382 (1939).

■ Ordinarily, a general verdict is viewed as "a complete entity which cannot be divided, requiring a new trial upon reversible error." *Jacuzzi Brothers, Inc.* v. *Todd*, 316 Ark. 785, 791, 875 S.W.2d 67 (1994). We have said, however, that "a new trial can sometimes be avoided by the entry of a remittitur" if the error "relates to a separable item of damages." *Id.* "Such a remittitur is fixed by the highest estimate of the element of damage affected by the error." *Swenson* v. *Monroe*, 244 Ark. 104, 108, 424 S.W.2d 165 (1968); *Martin* v. *Rieger*, 289 Ark. 292, 299, 711 S.W.2d 776 (1986). But if "we are at a complete loss to say what damages the jury would have allowed if the [improper evidence] had not been considered," and if "we cannot with confidence arrive at any maximum figure that the jury would surely have allowed" absent the error, a new trial cannot be avoided by the entry of remittitur. *Woods* v. *Kirby*, 238 Ark. 382, 385, 382 S.W.2d 4 (1964). If it is necessary to speculate in order to fix a remittitur, we reverse and remand the case for a new trial. *Arkansas State Highway Comm'n* v. *Perryman*, 247 Ark. 120, 125, 444 S.W.2d 564 (1969); *Arkansas State Highway Comm'n* v. *Darr*, 246 Ark. 204, 210, 437 S.W.2d 463 (1969); *Southwestern Bell Telephone Co.* v. *Fulmer*, 269 Ark. 727, 732, 600 S.W.2d 450 (Ark. App. 1980).

Even if were able to exclude from the jury's verdict the amount for the hernia operation and the amount of the hospital bill attributed to the unrelated treatment Ward received, we would have no way of knowing that the sole effect of the erroneously admitted evidence was to enhance the amount of damages awarded for medical expenses. *See Chicago, R.I. & P. Ry. Co.* v. *Batsel*, 100 Ark. 526, 536, 140 S.W. 726 (1911). To be sure, if we were to sustain the pain-and-suffering award in this case, we would violate the cardinal rule limiting recovery for pain and suffering to that caused by a defendant's negligence. *See generally* JACOB A. STEIN, STEIN ON PERSONAL INJURY DAMAGES § 2:1, at pp. 15-16 (2d ed. 1991) ("Compensation for pain and suffering must be proved to be the proximate result of the wrongful act. Remote or extraordinary consequences of the wrongful act are excluded from consideration in arriving at fair compensation. There can be no recovery for pain-and-suffering which must be endured whether or not the defendant acted tortiously. Injury which results from an intervening cause unconnected with the defendant's wrongful act is excluded from consideration in

arriving at the amount of the award."). *See also Southern Pac. Co. v. Hetzer*, 135 F. 272, 274 (8th Cir. 1905) ("[I]n actions for personal injury the plaintiff may recover for the bodily suffering and the mental pain which are inseparable and which necessarily and inevitably result from the injury."); *Jurcich v. General Motors Corp.*, 539 S.W.2d 595, 601 (Mo.Ct.App. 1976) (" 'Pain and suffering' are recoverable as damages in those cases where there has been a personal injury and the pain and suffering are the proximate result of the defendant's wrongful act causing the injury, and which necessarily and inevitably result from the injury.").

In *Wheeler* v. *Bennett, supra,* the plaintiff recovered $100,000 in damages for injuries she sustained in an automobile accident caused by the defendant's negligence. On appeal, we held that the plaintiff failed to show a causal relationship between chest pains, suffered some eight months after the accident, and the defendant's negligence. We affirmed the judgment, however, on condition that the plaintiff remit $8,281.24, an amount reflecting only the medical expenses incurred by the plaintiff in treating the chest pains. However, in the *Wheeler* case, we did not discuss whether the pain and suffering element of the judgment should have been a consideration in determining whether remittitur was proper. It presents no holding on the issue. We obviously overlooked the effect of the improperly admitted evidence of chest pains and the resulting medical bills on the pain and suffering component of the verdict and thereby failed in our obligation to fix a remittitur at "the highest estimate of the element of damage affected by the error." *Swenson* v. *Monroe, supra.* According to the *Swenson* case, a proper remittitur requires the reduction of the entire amount of the verdict "affected by the error" of the trial court. We now recognize our failure to consider the pain-and-suffering issue in the *Wheeler* case and will not repeat that oversight here.

As Ward failed to meet his burden to show that the expenses he incurred for the various treatments he received during his sixteen-day hospital stay were reasonably and causally related to the accident, we must agree that the trial court erred in admitting his medical bills into evidence. In so holding, it is unnecessary to address appellants' remaining arguments relating to the jury's assessment of damages and the trial court's refusal to allow a peremptory challenge, as these issues are unlikely to arise again on retrial.

Reversed and remanded.

DUDLEY, GLAZE, and CORBIN, JJ., not participating.

Special Justices WOODY BASSETT, JAMES O. COX, and DANIEL B. THRAILKILL join in this opinion.