Kyle ENGELHARDT, Kelli Prince, and Novia Engelhardt, Individually and as Co–Administrators of the Estate of Deborah Ann Engelhardt, Deceased Plaintiffs

v.

ROGERS GROUP, INC. Defendant

No. 4:00–CV–00511–WRW.

United States District Court,
E.D. Arkansas,
Western Division.

Feb. 22, 2001.

David R. Hogue, Conway, AR, for Plaintiffs.

Sam N. Laser, The Laser Law Firm, P.A., Bruce E. Munson, Huckabay, Munson, Rowlett & Tilley, P.A., Little Rock, AR, for Defendant.

## AMENDED AND SUBSTITUTE ORDER

WILSON, District Judge.

Pending is a motion (Doc. 20) for summary judgment filed by the defendant, Rogers Group, Inc. ("Rogers Group"). Plaintiffs have responded (Doc.23). For the reasons set forth below, the motion is DENIED in part and GRANTED in part.

## BACKGROUND

On December 21, 1998, Deborah Engelhardt was killed in a car accident while driving on U.S. Highway 65 between Conway and Greenbrier in Faulkner County, Arkansas, when another vehicle hydroplaned and collided with her car. The stretch of highway where the accident occurred was part of 6.28 mile stretch of road that had been resurfaced by the de-

fendant, Rogers Group, under a contract with the Arkansas State Highway and Transportation Department ("Highway Department").

Plaintiffs allege that: 1) Rogers Group negligently entered into a contract knowing that completion of the contract would result in dangerous conditions to the driving public; 2) Rogers Group knowingly used the wrong type of asphalt to resurface the highway; 3) Rogers Group failed to warn the driving public or the Highway Department of the dangerous road conditions; 4) Rogers Group did not comply with the Highway Department's contract; 5) Rogers Group failed to correct the dangerous conditions it created; and 6) Rogers Group is strictly liable for supplying an unreasonably dangerous product.

Rogers Group, in turn, has requested summary judgment arguing that: 1) it is protected by the "acquired immunity" doctrine; 2) it cannot be held strictly liable because the resurfaced road is not a product; 3) it owed no duty to warn the plaintiffs or the Highway Department that the highway was potentially dangerous; and 4) the entry into the contract was not the proximate cause of the plaintiffs' injuries.

## ANALYSIS

The underlying theme of plaintiffs' complaint is that Rogers Group should have used a different type of asphalt mix when resurfacing the highway. The Highway Department's contract with Rogers Group called for the use of Type III asphalt—a mix that sometimes causes hydroplaning during heavy rains—it was primarily designed for use in parking lots, overlays; potholes, and low volume highways.[1] Highway 65, where the accident occurred, is a high volume highway. *Id.*

■ Under the acquired immunity doctrine, "[i]f damages are suffered as a result of the performance of a construction contract for the state or political subdivision, and the damages result from something

1. *See* Affidavit of Steven Ray Garrett, Exhibit A, Doc.# 24

inherent in the design and specifications required by the public agency, the contractor is not liable unless he is negligent or guilty of a wrongful tort."[2] Which is to say, contractors can be responsible for their negligent acts done independently of the state agency; negligent acts done independently for its own private ends and convenience; and for negligence committed during the performance of the contract.[3] In this case, the contract required the use of Type III asphalt, and plaintiffs have consistently maintained (and Rogers Group hasn't disagreed) that Type III asphalt was used. Plaintiffs do not argue that the asphalt itself was defective, or that it was defectively applied to the surface of the road; instead, they insist that Rogers Group was negligent in using the Type III asphalt even though that is what the contract required.

First of all, even though Rogers Group had the option (and probably the duty) not to enter the contract, it did not have the option to use a different type of asphalt once the contract was made.[4] In fact, it appears that, if Rogers Group had used a different asphalt mix, it would have materially breached the contract thus losing protection of the acquired immunity doctrine.

The record reflects that the Highway Department directly supervised and approved the asphalt mix Rogers Group used. That being so, if there were any changes in the contract, they were made with the agreement of the Highway Department. In the end, the Highway Department got exactly what it contracted for—a highway resurfaced with Type III asphalt.

Second, the contract specifications were prepared and approved by the Highway Department before Rogers Group bid on the project; therefore, if there was any negligence in selecting Type III asphalt, it lays at the feet of the Highway Department alone.

## STRICT LIABILITY

■ Plaintiffs have alleged that Rogers Group manufactured and designed a product that was unreasonably dangerous to the driving public. Summary Judgment is granted on this claim for the following reasons. First, the contract to resurface the highway appears to be a service contract;[5] Rogers Group is not in the business of supplying highways;[6] and the highway is neither a "tangible object" nor a "good" as those terms are defined under applicable Arkansas statutes,[7] i.e., the

2. *See Jordan v. Sweetser, Inc.*, 64 Ark.App. 58, 977 S.W.2d 244, 248 (1998) (citing *Muskogee Bridge v. Stansell*, 311 Ark. 113, 842 S.W.2d 15 (1992)); *See also, Guerin Contractors, Inc., v. Reaves*, 270 Ark. 710, 606 S.W.2d 143, 144 (1980)(citing *Southeast Construction Co. v. Ellis*, 233 Ark. 72, 342 S.W.2d 485 (1961))

3. *See Southeast Construction Co. Inc., v. Ellis*, 233 Ark. 72, 342 S.W.2d 485, 488 (1961)(citing a jury instruction as a correct statement of the law in Arkansas)

4. *See* Doc.# 20—Affidavit of Eddie Riedmueller (stating "Rogers Group had no input with the Highway Department either when the specifications were set or later, concerning the choice of type of asphalt")

5. *See e.g., JRT, Inc., v. TCBY Systems, Inc.*, 52 F.3d 734 (8th Cir.1995); (a contract which predominantly involves the sale of services, rather than goods, the essence of the contract is not a good as defined by the Arkansas

Uniform Commercial Code); *Elk Corp. of Arkansas v. Jackson*, 291 Ark. 448, 725 S.W.2d 829 (1987)(when a contract primarily involves the sale of services, the Arkansas Product Liability Act will not impose liability as no good or product is involved)

6. Plaintiffs have offered no evidence that Rogers Group is in the business of supplying highways, and defense counsel indicated in the telephone conference held on February 13, 2001, that, to the best of his knowledge, Rogers Group was in the business of fixing and resurfacing existing roads.

7. A "product" is defined by the Arkansas Product Liability Act as "any tangible object or goods produced." *See* Ark.Code Ann. § 16–116–102(2). "Goods" are "all things which are moveable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action." *See*

highway is not a product. Second, even if the highway is deemed to be a product of Rogers Group, the acquired immunity doctrine would seem to shield Rogers Group (at least from this claim) because, as discussed below, Rogers Group followed the Highway Department's specifications in performing the contract.

■ Plaintiffs contend that, if the highway cannot be considered a defective product, then the asphalt Rogers Group used should be. Although plaintiffs believe that the Type III asphalt was used in a negligent manner, there is no evidence that suggests that the Type III asphalt used by Rogers Group was a defective Type III asphalt. In fine, the asphalt was not defective whether it is labeled a product or not.

Summary judgment is GRANTED to the defendant on plaintiffs' strict liability claim.

## DID ROGERS GROUP HAVE A DUTY TO WARN THE PUBLIC?

■ Plaintiffs argue that Rogers Group had a duty to warn the plaintiffs and other members of the driving public of the potential danger of the highway created by the use of Type III asphalt. The contract did not oblige Rogers Group to do anything after completion of the contract work. As examples, the contract did not obligate Rogers Group to repair the highway after the contract performance was approved and accepted, nor did Rogers Group have any post-performance duties to warn the public of the highway's potential dangers. After the performance was completed and that work was accepted, all duties to warn the public belonged to the Highway Department. *See e.g., Jordan v. Sweetser, Inc.,* 64 Ark.App. 58, 977 S.W.2d

244 (1998) (holding that contractor's duty to warn the public did not go beyond the obligations created by the contract).

Summary Judgment is GRANTED to the defendant on plaintiffs' "failure to warn the public" claim and plaintiffs' "failure to repair" claim.

## DID ROGERS GROUP COMPLY WITH THE CONTRACT?

■ Plaintiffs next argue that Rogers Group is not entitled to acquired immunity because it did not comply with the contract. For example, the contract was allegedly not finished on time. Even assuming this to be true, which I must for the purposes of this motion, the acquired immunity doctrine protects Rogers Group unless the failure to meet the contract requirements caused the accident.[8] Plaintiffs have offered no evidence that suggests that the alleged delay caused the accident.

■ Plaintiffs also suggest that the contract specifications were not met because Rogers Group mixed the asphalt in a way that varied from the contract requirements. More specifically, plaintiffs argue that Rogers Group used the wrong sized sieves. They base this contention on information found in *Standard Specifications for Highway Construction Edition of 1996* ("Construction Edition"). This argument fails for the following reasons. First, Rogers Group was not required to use the standards set forth in the *Construction Edition* because those standards were not a part the contract. Second, even if the contract had originally required the use of the Construction Edition's asphalt recipe, the Highway Department and Rogers Group were free to modify the terms of

Ark.Code Ann. § 4–2–105(1). "Tangible objects" are items which can be held, seized, transported or otherwise moved. *See* Ark. Code Ann. §§ 17–14–103(13); 25–15–208; 20–77–904(a).

8. *See Jordan v. Sweetser, Inc.,* 64 Ark.App. 58, 977 S.W.2d 244, 248 (1998)(even though con-

tractor did not follow the plans when it dug an excavation too deep, immunity still attached because "even if the excavation was deeper than the plans specified ... that variation did not cause the accident..."); *Guerin Contractors, Inc., v. Reaves,* 270 Ark. 710, 606 S.W.2d 143 (1980)

their agreement. The Highway Department accepted and approved the Rogers Group asphalt after having directly supervised the mixing process, i.e., the parties agreed to use the Rogers Group recipe. Third, the plaintiffs' basic position is that the accident was caused by Type III asphalt, and there is no evidence which suggests that the highway is covered by some other dangerous type of asphalt. Because the plaintiffs' basic claim is that the accident was caused by Type III asphalt, it is hard to understand how they can also argue that the highway is not covered by Type III asphalt. Be that as it may, the contract required Rogers Group to use Type III asphalt, and everything in the record indicates that, regardless of how it was mixed, Rogers Group used Type III asphalt.

Rogers Group followed the contract specifications, and it was not negligent in the *performance* of the contract.

## DID ROGERS GROUP NEGLIGENTLY ENTER THE CONTRACT?

As discussed above, under the acquired immunity doctrine, "[i]f damages are suffered as a result of the performance of a construction contract for the state or political subdivision, and the damages result from something inherent in the design and specifications required by the public agency, the *contractor is not liable unless he is [independently] negligent or guilty of a wrongful tort.*" [9] Plaintiffs contend: 1) that Rogers Group knew the road was going to be dangerous to the public before it contractually agreed to use Type III asphalt, and that, because of that knowledge, Rogers Group was negligent when it entered the contract; and 2) that the ac-

quired immunity doctrine only protects contractors who are not independently negligent in the performance of the contract, and it does not protect Rogers Group from negligence that occurred before performance started.

Rogers Group argues: 1) that plaintiffs' theory is improper and unprecedented; 2) that allowing the plaintiffs to sustain a "negligent entry into a contract" claim would improperly ignore the public policy underlying the acquired immunity doctrine; 3) that it owed no duty to the plaintiffs or the Highway Department; and 4) that entering the contract was not the proximate cause of the accident.

I agree that a contractor with a state agency usually can trust the agency's design specifications, and it assumes no duty to check the specifications for safety defects.[10] But this case is not typical.

Generally, the acquired immunity doctrine is triggered after an accident reveals that, even though the state agency's contract specifications were followed, the design underlying those specifications was defective. This case is atypical because Rogers Group allegedly knew that the contract specifications were defective and dangerous *before* it entered into the contract. If this is true there is a factual question about what a reasonable person, armed with the knowledge that Type III asphalt causes life-threatening hydroplaning, would have done (enter the contract, refuse to enter the contract, warn the Highway Department of the dangers, or the like). Which is to say, if a contractor knows beforehand that a contract's specifications will result in dangerous defects, that contractor takes on extra duties be-

**9.** *See Guerin Contractors, Inc. v. Reaves,* 270 Ark. 710, 606 S.W.2d 143, 144; *See also, Jordan v. Sweetser, Inc.,* 64 Ark.App. 58, 977 S.W.2d 244, 248 (1998)(emphasis added)

**10.** "If the contractor was required, at its peril, to check and double check all plans given it and required to keep an engineering force for the purpose of interpreting these plans, and

was not permitted to follow the orders of the engineering force of its superior, then the cost of public improvement would be so increased as to make them almost prohibitive." *Southeast Construction Co. v. Ellis,* 233 Ark. 72, 342 S.W.2d 485 (1951) (citing *Wood v. Foster & Creighton Co.,* 191 Tenn. 478, 235 S.W.2d 1 (1950))

fore it can invoke the acquired immunity doctrine.

With regard to duties owed, Rogers Group cited several cases which indicate that duties exist and can be breached even when performance of the contract is perfect. In its letter dated February 7, 2001, Rogers Group stated: "There is no duty upon a contractor to warn the government of dangerous characteristics of which it [the government] is aware." (Citing *Ramey v. Martin–Baker Aircraft Co.*, 874 F.2d 946 (4th Cir.1989); *Littlehale v. E. I. du Pont De Nemours & Co.*, 380 F.2d 274 (2nd Cir.1967); and *Trevino v. General Dynamics Corp.*, 865 F.2d 1474 (5th Cir. 1989)). The cases relied upon by the defendant each dealt with the "military contractor defense" which, as Rogers Group has correctly argued, is based upon some of the same public policy concerns as the acquired immunity doctrine.[11] Both are intended to save time and money, and both are designed to prevent the contractor from being held liable when the government is actually at fault but is protected by sovereign immunity. *See Trevino*, 865 F.2d at 1478. It is critically important to note that the military contractor defense only shields government suppliers from liability, if, among things, the suppliers "warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *See Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). This duty is necessary partially because, in its absence, there would be an incentive for contractors to withhold knowledge of risks, since conveying that knowledge might disrupt the contract, but withholding the knowledge would produce no liability. *Id.*

■ In this case, plaintiffs have offered an affidavit suggesting that Rogers Group knew of the alleged dangerous design defects before entering into the contract with the Highway Department,[12] and it appears that Rogers Group never warned the Highway Department of these flaws.[13] Although Rogers Group has suggested it had no duty to warn the Highway Department because the Highway Department knows about roads and *probably* knew about the dangers of Type III asphalt,[14] there are no affidavits from the Highway Department stating when it became aware of the contract's defects. Therefore, if I deem the military contractor defense analogous, and I think I should, Rogers Group *may* have had a duty to warn the Highway Department of the contract's flaws. It would be improper to grant summary judgment on this issue because discovery has not been completed, and it is yet unknown what or when the Highway Department knew about the dangers of Type III asphalt.[15]

■ Even if Rogers Group did not have a duty to warn the Highway Department about the dangers of using Type III asphalt, it still owed a duty to the driving public to decline to enter the contract if it knew beforehand that the specifications would result in a dangerous surface.[16] If

11. *See* Doc. 21 pg. 5–6

12. *See* Affidavit of Steven Ray Garrett (stating "At the time that Rogers Group, Inc., was awarded the high volume overlay project on Highway 65 North, it was aware of each of the above mentioned problems with using the design mix on a highway application, and that it was using Type 3 design mix improperly in the wrong application.")

13. *See* Doc. 20—Affidavit of Eddie Riedmuller (stating that "Rogers Group had no input with the Highway Department either when the specifications were set or later, concerning the type of asphalt.")

14. *See* Letter from Rogers Group dated February 7, 2001 stating: "It would be unrealistic to conclude that the engineers of the AHTD are not as knowledgeable as Steve Garrett regarding asphalt."

15. One would assume that the Highway Department would have at least considered changing the asphalt specifications once it became aware of the dangers of resurfacing the highway with Type III asphalt.

16. *See Oliver v. Hallett Construction Co.*, 421 F.2d 365 (8th Cir.1970)(stating that "... negligence, under Arkansas law, is the failure to do that which a person of ordinary care and

the law were otherwise, a contractor could enter into a contract with a state agency (knowing that it would be protected by the state's immunity) even if that contractor was absolutely certain that entering into and performing the contract was likely to kill people. Because there are material questions of fact about such questions as what Rogers Group knew at the time the contract was signed, it would be improper to grant summary judgment.

Rogers Group maintains that, even if the Highway Department had been warned, the same type of asphalt would have been used. First of all, it's easy for the Highway Department to say now what it would have done (or not done) if it had been warned, but theories based on hindsight do not retroactively eliminate duties that were owed. Second, if Rogers Group had warned the Highway Department, this discussion would be moot because the duty to warn would not have been breached, and, at least on the failure to warn the Highway Department claim, Rogers Group would have received acquired immunity. Again, it is not factually clear whether that duty to warn the Highway Department existed, or whether it was breached.

Finally, Rogers Group contends that, because the Highway Department was going to use Type III asphalt no matter what, the decision by Rogers Group to enter the contract was not the proximate cause of the plaintiffs' injuries. More precisely, Rogers Group is arguing that if it had not entered the contract and resurfaced the road with Type III asphalt, another contractor would have.[17] This "if I wasn't negligent than someone else would have been" argument is unpersuasive, and a jury should decide the proximate cause issues.

## CONCLUSION

With regard to plaintiffs' claims of negligent entry into a contract and failure to

prudence would do under the same or similar circumstances, or the doing of which a person of ordinary care and prudence would not do under the same or similar circumstances.")

warn the Highway Department, numerous questions of material fact remain for trial, and summary judgment is DENIED on these claims. With regard to all the other claims, summary judgment is GRANTED.

17. *See* Letter by Rogers Group dated February 2, 2001