Charles FRANKLIN, et al. *v.* OSCA, INC.

91-150                                    825 S.W.2d 812

Supreme Court of Arkansas
Opinion delivered February 24, 1992

*Blair Arnold* and *J.T. Skinner*, and *David Hodges*, for appellants Charles and Barbara Moses Franklin.

*Davidson Law Firm*, for appellant ENSCO.

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *John E. Moore* and *Valerie Denton*, for appellant Plant Industrial Services, Inc.

*Shackleford, Shackleford & Phillips, P.A.*, for appellee.

DONALD L. CORBIN, Justice. This appeal arises pursuant to ARCP Rule 54(b) from an order granting summary judgment in favor of appellee-defendant Osca.

On August 18, 1987, appellant-plaintiff Charles Franklin sustained chemical burns when he passed out from heat exhaustion while removing calcium chloride from inside an eight-foot tank at the ENSCO Hazardous Waste Facility in El Dorado. At the time Franklin sustained his injuries, he was employed by Thrift Personnel, Inc. (Thrift), and working under the supervision of Plant Industrial Services, Inc. (Plant). Plant had obtained Franklin's services after Osca, the prime contractor hired by ENSCO to clean out the tanks, retained Plant to complete the process of cleaning ENSCO's tanks.

On March 2, 1989, Franklin and his wife filed a personal

injury suit against ENSCO and Plant. Plant then sued Osca and Thrift through a third-party complaint seeking contribution; the plaintiffs subsequently amended their complaint to seek damages against Osca and Thrift. On March 1, 1991, the trial court granted Osca's motion for summary judgment, and entered a *nunc pro tunc* order stating there was no just reason for delay, and there were dangers of hardships or injustice to the plaintiffs and the third-party plaintiff if the trial were not to proceed as to all defendant or third-party defendants. The order further stated that the danger of hardship or injustice would be alleviated by an immediate appeal. Appellants Franklin, ENSCO, and Plant have all filed separate appeals from the summary judgment in favor of appellee Osca.

We find it necessary to address once again the requirements of ARCP Rule 54(b). In *Arkhola Sand & Gravel Co.* v. *Hutchinson*, 291 Ark. 570, 726 S.W.2d 674 (1987), we gave notice that merely tracking the language of Rule 54(b) will not suffice. We held that "the *record* must show facts to support the conclusion that there is some danger of hardship or injustice which would be alleviated by an immediate appeal." (Emphasis added.) *Id*. at 575, 726 S.W.2d at 677. In *Arkhola*, we noted that the trial court's order failed to contain facts supporting the finding that there was no just reason for delay. However, we accepted the appeal and hoped that our clarification of the rule's requirements would resolve the confusion.

Unfortunately, the confusion is still evident. In this case, the trial court's order tracks the language of Rule 54(b), yet does not contain facts to support its determination. On appeal, the various appellants point out the relevant facts. They argue that the question of Osca's liability depends in part on the nature of Osca's relationship with defendants' Plant and ENSCO. For this reason, a subsequent reversal as to defendant Osca would necessitate a trial in which much of the same testimony would be duplicated, and appellants argue that the expense and time involved in a second trial would constitute a hardship on the parties involved. We admit that our reference to the record in the *Arkhola* case may have been more confusing than illuminating. Under Rule 54(b), the trial court may enter a final judgment or order in a multiple claims or multiple parties case by making an *express determination* that there is no reason to delay an appeal. In other

words, the court must *factually* set forth reasons in the final judgment, order, or the record, which can then be abstracted, explaining why a hardship or injustice would result if an appeal is not permitted. Accordingly, we accept the appeal in this case, but henceforth give notice that under the terms of Rule 54(b), the final judgment, order or record must contain specific facts supporting the trial court's determination that there is some danger of hardship or injustice which would be alleviated by an immediate appeal.

Osca argues that the summary judgment should be upheld because appellants' response to Osca's motion for summary judgment did not comply with ARCP Rule 56(e). Osca's motion for summary judgment alleged that Osca was entitled to judgment as a matter of law based on three factual assertions and an allegedly supporting 102 page deposition. The three factual assertions Osca relied on are: 1) Plaintiff Charles Franklin was an employee of Osca's independent contractor, Plant; 2) Osca did not in any manner retain supervision or endeavor to perform supervisory control, directly or indirectly, over the operation of Plant, its subcontractor, and Plant's operation was totally independent of Osca; and 3) No meritorious independent acts of negligence are chargeable to Osca. Osca's motion did not contain an affidavit.

In response to Osca's motion, the Franklin plaintiffs asserted that questions of fact existed which should be submitted to a jury, and the plaintiffs filed thirteen depositions allegedly supporting their assertion. Under Rule 56(e), when the party moving for summary judgment has made a prima facie showing of entitlement to summary judgment, the opposing party's response must set forth "specific facts" showing a genuine issue for trial. Osca contends that appellants' attachment of thirteen depositions did not comply with the "specific facts" requirement of 56(e). However, under 56(c), a court may not grant summary judgment unless "the pleadings, depositions, answers to interrogatories and admissions on file . . ." reveal that there is no genuine issue for trial. As subsection (c) requires the court to consider virtually the entire documentary record in determining whether summary judgment is appropriate, *see* D. Newbern *Arkansas Civil Practice and Procedure* § 26-7 at 256, we reject Osca's argument regarding the technical sufficiency of appellants' re-

sponse to Osca's motion for summary judgment.

The various appellants rely on three theories of liability in urging us to reverse the summary judgment in favor of Osca. First, they argue that Osca failed to warn Plant's employees of the hazardous nature of calcium chloride. Second, they argue that Osca took steps to provide for the safety of Plant's employees, and then performed negligently in its rescue efforts after Franklin passed out in the tank. Third, they argue that Osca is subject to liability because Osca retained control of the ENSCO premises after the Plant employees reported for work. Osca relies primarily on its status as a prime contractor and its lack of supervision over the manner in which Plant performed in urging us to uphold the summary judgment.

In *Gordon* v. *Matson*, 246 Ark. 533, 439 S.W.2d 627 (1969), this court explained the duties of a general contractor to a subcontractor's employees. The court analogized the duties of a general contractor to those of an owner of the premises. These duties include the duty to exercise ordinary care, and the duty to warn of unusually hazardous conditions that might affect the welfare of the subcontractor's employees. A general contractor may also be held liable for injuries to employees of the subcontractor if the general contractor began to perform certain duties or activities and then negligently failed to perform or performed in a negligent manner. *Id.* In *McMichael* v. *United States*, 751 F.2d 303 (8th Cir. 1985), the Eight Circuit cited the *Gordon* case and expounded on its analogy to owner liability. The Eighth Circuit likened a general contractor's liability to the "business invitee" concept—when a general contractor invites a subcontractor onto a job site, the general contractor has a duty to exercise ordinary care for the welfare of the subcontractor's employees. *Id.*

Osca's on-site manager, Dee Cuttell, testified in his deposition that Osca was in the business of disposing hazardous and non-hazardous waste. He testified that he told Plant's manager and owner that calcium chloride was a non-hazardous mixture. Dr. Simmons, a witness retained by Franklin, testified that it's been known for several decades that calcium chloride can produce several types of significant skin injuries, and that people in the chemical industry should know that calcium chloride can

be dangerous.

The depositions of Cuttell, Tim Babineaux, a shift leader for Osca, and Johnny Berry, Plant's owner and manager, provide testimony regarding the events on the day Franklin sustained his injuries. Berry testified that Cuttell hired Plant to remove calcium chloride from ENSCO's tanks. Plant reported for work on August 18, 1987, and Cuttell told Plant where to set up, and showed Plant where to get the "slicker suits" provided by ENSCO. Cuttell also told Plant that Osca had experienced a lot of problems with heat and humidity, and that ice water and Gatorade were available for Plant's workers. Cuttell testified that the temperature was probably 90 to 100 degrees that day. Babineaux, Osca's shift leader, testified that Osca was "taking precautions" regarding the people working in the tanks that day. When Franklin passed out from heat exhaustion, Cuttell and others failed in their attempt to get Franklin out of the tank with a ladder. Osca finally removed Franklin by using an ENSCO crane with a cherry picker or work basket attached to it. Babineaux testified that fifteen to thirty minutes elapsed before the device arrived, and that Osca did not keep the device on site. Berry testified that once Franklin was out of the tank, he and Cuttell removed Franklin's slicker suit and waders. Dr. Simmons testified that Osca's safety measures were appropriate except that it did not provide a way to get people out of the tank as rapidly as possible in cases of heat exhaustion. Dr. Simmons further testified that Franklin's burns could have been prevented if all of Franklin's clothing had been removed, and his skin had been washed with water.

■■ Summary judgment is an extreme remedy which should be allowed only when there is no issue of fact to be litigated. *Culpepper* v. *Smith*, 302 Ark. 558, 792 S.W.2d 293 (1990). The burden is on the movant to demonstrate the absence of a genuine issue of fact, and the court must view the testimony in the light most favorable to the party against whom judgment is sought. *Id*. When reasonable minds might differ as to conclusions to be drawn from the facts disclosed, summary judgment is inappropriate. *Id*.; *Hurst* v. *Feild*, 281 Ark. 106, 661 S.W.2d 393 (1983). On appeal, this court determines the appropriateness of a grant of summary judgment based on whether the evidentiary items presented in support of the motion left a material question

of fact unanswered. *Nixon* v. *H & C Elec. Co., Inc.*, 307 Ark. 154, 818 S.W.2d 251 (1991). In this case, the trial court granted summary judgment notwithstanding the court's statement that "there are issues of genuine fact as they relate to the cherry picker availability and the removal of protective clothing." Given our recognition of various instances in which a prime contractor may be liable for injuries to a subcontractor's employees, we find the appellants' proof shows the existence of material questions of fact which, if resolved in appellants' favor, could result in a finding of liability on the part of Osca. Accordingly, we reverse the grant of summary judgment and remand for trial.