SLIP OPINION

Cite as 2015 Ark. App. 542

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV–15–170

| | |
|---|---|
| BRENDA HENDERSON | **OPINION DELIVERED** OCTOBER 7, 2015 |
| APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. CV–2013–430-5] |
| V. | |
| | HONORABLE JODI RAINES DENNIS, JUDGE |
| TYSON FOODS, INC. | |
| APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellant Brenda Henderson worked for Packers Sanitation Services, Inc. (PSSI), which had contracted to clean and sanitize equipment for appellee Tyson Foods, Inc. (Tyson). After Henderson was injured on the job, she filed a negligence suit against Tyson. The Jefferson County Circuit Court dismissed her claim, awarding Tyson summary judgment. On appeal, Henderson argues that the trial court erred in awarding summary judgment because there were questions of material fact about whether Tyson reserved a right to control its sanitation subcontractor, PSSI, and whether Tyson failed to use ordinary care for Henderson's safety and owed a duty to warn her about unreasonably unsafe conditions. We affirm.

I. *Statement of Facts*

Henderson claimed in her August 16, 2013 complaint against Tyson that PSSI acted as an agent of Tyson in managing the provision of some sanitation services at Tyson facilities.

She claimed that while she was employed by PSSI to perform the sanitation work, she was injured at a Tyson plant. She was cleaning a piece of production equipment, a "C.A.T. wheel," when her glove became trapped, and her hand was pulled into the machine and against the blade. She alleged in her complaint that Tyson was, or should have been, aware that the C.A.T. wheel posed a substantial risk of injury to her and that precautions were not being used to prevent injury during maintenance of the dangerous machinery. She charged that she was severely injured and that Tyson controlled the operation, planning, management, and quality control of the facility. She alleged that she asserted claims against Tyson because it directly participated and controlled the operation and maintenance of the machinery and owed a duty as owner of the facility.

Tyson answered, denying that PSSI was its agent, and claimed that PSSI was an independent contractor with which Tyson contracted to provide services, and that the "Sanitation Service Agreement" (SSA) between Tyson and PSSI controlled. Tyson filed a motion for summary judgment on March 26, 2014, alleging that the machine Henderson was cleaning was under power before she began cleaning it, and that there was no dispute that Henderson did not attempt to disconnect the power prior to her injury. Tyson also claimed that Henderson's complaint against it should be dismissed because her employer, PSSI, agreed as a condition of its contract to take on the duties to train or warn Henderson regarding risks involved with cleaning the machinery. Tyson relied on *Williams v. Nucor-Yamato Steel Company*, 318 Ark. 452, 886 S.W.2d 586 (1994), arguing that no duty exists between a prime contractor and the employee of an independent contractor unless there is such a retention

2

SLIP OPINION

of a right of supervision by the prime contractor that the contractor is not entirely free to do the work his own way.

Attached to the summary-judgment motion was the SSA, which provided that PSSI was to perform sanitizing operations for areas inside and outside the facility, including equipment, in a manner "meeting all regulatory agency and Tyson sanitation standards, safety," and more, including the facility's "SSOPs." Also, PSSI was to furnish all chemicals, supplies, equipment, and labor, including supervisors, necessary to clean and sanitize the equipment. The SSA provided that PSSI would train, supervise, and control the "labor as is necessary to perform the duties provided for" in the SSA. PSSI contracted to perform as an independent contractor and in a manner "which it deems in its own best judgment to be suitable for the purposes contemplated by this" SSA. PSSI agreed to determine the appropriate methods for safely cleaning the equipment and to train its employees. PSSI also agreed to provide safety practices and procedures to prevent injuries to its employees.

Henderson replied, alleging that Tyson did not delegate its duty of care to PSSI. She claimed that an operator like Tyson owes a duty of care for the dangers in its facility to the employees of its subcontractor, citing *D.B. Griffin Warehouse, Inc. v. Sanders*, 349 Ark. 94, 76 S.W.3d 254 (2002), for the proposition that an employer of an independent contractor owes a common-law duty to the contractor's employees to exercise ordinary care for their safety and to warn against any hidden dangers or unusually hazardous conditions. Henderson argued that the language of the SSA wherein PSSI was to perform "in a manner meeting all regulatory agency and Tyson sanitation standards, safety, food safety and quality assurance

3

SLIP OPINION

requirements, including the Plant's SSOP," was a reservation of control by Tyson. Finally, Henderson claimed that she was not properly trained and that the danger was not an integral part of the work. Based on these arguments, she asserted that summary judgment was not appropriate. Attached to her response was her own affidavit alleging that she was trained for two days to clean the C.A.T. wheel and that she had performed the job for about a year prior to the injury. She stated that, at times while she worked, a Tyson supervisor walked through with a PSSI supervisor and that she understood that Tyson maintained the machines.

The trial court granted Tyson's motion for summary judgment by order filed September 16, 2014. The trial court found that Tyson provided sufficient proof to establish a prima facie case that, as a matter of law, it owed no duty to Henderson. The trial court was not convinced that the portions of the contract that required PSSI to comply with Tyson's sanitation standards, safety, food safety, and quality assurance requirements were evidence that Tyson retained control of the supervision of PSSI's employees. Neither was the court convinced of Tyson's control by Henderson's affidavit stating, "At times, a Tyson supervisor walked through with a PSSI supervisor." The trial court also found that the terms of the contract provided that PSSI's job was to perform tasks that involved obvious hazards. The trial court stated in its opinion that,

> [w]hen equipment to be cleaned includes grinders, eviscerators, saws, and augers, it is obvious that the task is hazardous. The Court must also note that the plaintiff states that she had been cleaning the piece of equipment without incident for approximately one year prior to her injury.

Finally, the court cited *Jackson v. Petit Jean Electric Co-operative*, 270 Ark. 506, 606 S.W.2d 66 (1980), and *D.B. Griffin*, *supra*, in its finding that Tyson did not owe Henderson a duty to properly train or warn her of potential risks.

Henderson filed a motion to reconsider, but that motion was deemed denied when the trial court did not rule on it within thirty days of its filing. Ark. R. Civ. P. 59 (2014). Henderson then filed a timely notice of appeal, and this appeal followed, wherein Henderson argues that Tyson reserved a right to control its sanitation subcontractor, PSSI, and that Tyson failed to use ordinary care for her safety and owed her a duty to warn about unreasonably unsafe conditions.

## II. *Standard of Review*

Summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *O'Marra v. Mackool*, 361 Ark. 32, 204 S.W.3d 49 (2005); *Riverdale Dev. Co. v. Ruffin Bldg. Sys. Inc.*, 356 Ark. 90, 146 S.W.3d 852 (2004). The burden of sustaining a motion for summary judgment is the responsibility of the moving party. *O'Marra v. Mackool, supra*; *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). Once the moving party has established a prima facie entitlement to summary judgment, the nonmoving party must meet proof with proof and demonstrate the existence of a material issue of fact. *O'Marra v. Mackool, supra*; *Pugh v. Griggs, supra*. We determine if summary judgment was appropriate based on whether the evidence presented by the moving party in support of its motion leaves a material fact unanswered, viewing the evidence in the light most favorable to the nonmoving party, resolving all doubts and inferences against the moving party. *O'Marra v. Mackool, supra*; *George v. Jefferson Hosp. Ass'n Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999); *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998). Our review is not limited to the pleadings but also focuses on the affidavits and other documents filed by the parties. *Hisaw v. State Farm Mut. Auto. Ins. Co.*, 353 Ark. 668, 122 S.W.3d 1 (2003); *Brown v. Wyatt*, 89 Ark. App. 306, 202 S.W.3d 555 (2005). After reviewing the undisputed facts, we will reverse a grant of summary judgment if, under the evidence, reasonable men might reach different conclusions from those undisputed facts. *Hisaw v. State Farm Mut. Auto Ins. Co., supra*; *Brown v. Wyatt, supra*.

SLIP OPINION

*Draper v. ConAgra Foods, Inc.*, 92 Ark. App. 220, 228–29, 212 S.W.3d 61, 66 (2005).

### III.  *Reservation of Right to Control*

Regarding the issue of distinguishing between an independent contractor and an employee, the Arkansas Supreme Court stated in *Kistner v. Cupples*, 2010 Ark. 416, at 6–7, 372 S.W.3d 339, 343–44, as follows:

> We have long held that an independent contractor is one who contracts to do a job according to his own method and without being subject to the control of the other party, except as to the result of the work. *See  Ark. Transit Homes*, [*Inc. v. Aetna Life & Cas.*], 341 Ark. 317, 16 S.W.3d 545 2000); *Johnson Timber Corp. v. Sturdivant*, 295 Ark. 622, 752 S.W.2d 241 (1988); *Moore v. Phillips*, 197 Ark. 131, 120 S.W.2d 722 (1938); *W.H. Moore Lumber Co. v. Starrett*, 170 Ark. 92, 279 S.W. 4 (1926). The governing distinction is that if control of the work reserved by the employer is control not only of the result, but also of the means and manner of the performance, then the relation of master and servant necessarily follows. But if control of the means be lacking, and the employer does not undertake to direct the manner in which the employee shall work in the discharge of his duties, then the relation of independent contractor exists. *See Ark. Transit Homes*, *supra* (citing *Massey v. Poteau Trucking Co.*, 221 Ark. 589, 254 S.W.2d 959 (1953)). The right to control is the principal factor in determining whether one is an employee or an independent contractor. *See id*. It is the right to control, not the actual control, that determines the relationship. *See id*. (citing *Taylor v. Gill*, 326 Ark. 1040, 934 S.W.2d 919 (1996)).

Henderson contends that summary judgment was not appropriate because there remains a question of material fact about whether Tyson reserved a right to control its sanitation subcontractor, PSSI.  She cites *Williams*, *supra*, for the proposition that, even when an owner, such as Tyson, hires an independent contractor, the owner continues to have a duty to exercise ordinary care and to warn in the event there are any unusually hazardous conditions existing which might affect the welfare of the employees.  An exception to this duty exists when the owner has reserved no right to control the work of the subcontractor, and the subcontractor is absolutely free to perform the work in any way it chooses.  *See*

*Williams,* 318 Ark. at 455–56, 886 S.W.2d at 587. Henderson admits that she did not present substantial evidence of Tyson's actual control over PSSI. But, she insists that there was sizable evidence that Tyson reserved the right to control the work of PSSI at its facility. *See id*. (holding that, where no actual control exists, the contract is determinative of whether the owner retained right of control or supervision).

Henderson contends that the contract here explicitly reserves the right in Tyson to control the work of PSSI. Section 1.2 of the SSA provides in part:

> PROVIDER shall perform the cleaning and sanitizing operations for the areas inside the Plant and outside areas identified in Exhibit A, including equipment, attached hereto and made part hereof, in a manner meeting all regulatory agency and Tyson sanitation standards, safety, food safety and quality assurance requirements, including the Plant's SSOP. . . .

Henderson also points to PSSI's agreement to warrant that its employees would wear appropriate clothing and personal protective equipment. She argues that the SSA prescribes specific and far-reaching Tyson policies that control the work of PSSI. Further, she contends that PSSI had to comply with the compliance policy applicable to Tyson employees, and that PSSI was required to attend training as Tyson deemed necessary to aid it in performing its obligations under the SSA. The SSA further required PSSI to cooperate with Tyson to investigate employment–law violations and to cooperate with Tyson on any remedial action that was deemed necessary. The SSA also allows Tyson to

> inspect the books, records and operations of [PSSI] for the purpose of validating [PSSI's] compliance with its obligations under this Agreement, including but not limited to compliance with applicable laws.

Tyson requires PSSI to provide a certificate of safety compliance, and the SSA requires daily inspection by Tyson. Thus, Henderson contends that Tyson retained the power and duty to maintain and supervise safety precautions. She claims that PSSI's agreement to meet specifications for cleanliness or sanitation "established by the USDA or other regulatory agency or Tyson" plainly gives Tyson control. She argues that these facts, viewed in the light most favorable to her, strongly show that Tyson did not delegate its duty of care to PSSI, and summary judgment should not have been granted.

We hold that the trial court properly found that Tyson owed no duty to Henderson because Tyson did not maintain control over the training or supervision of PSSI's employees. The Arkansas Supreme Court stated:

> We explained in *Marlar* [*v. Daniel*], 368 Ark. 505, 508, 247 S.W.3d 473, 476 (2007), that [t]he law of negligence requires as essential elements that the plaintiff show that a duty was owed and that the duty was breached. The question of what duty, if any, is owed a plaintiff alleging negligence is always a question of law and never one for the jury. (Citations omitted.) Thus, the law of negligence requires as an essential element that the plaintiff show that a duty of care was owed. *Young* [*v. Gastro-Intestinal Ctr.*], 361 Ark. 209, 205 S.W.3d 741 [(2005)]; *Young v. Paxton*, 316 Ark. 655, 873 S.W.2d 546 (1994). Duty is a concept that arises out of the recognition that relations between individuals may impose upon one a legal obligation for the other. *Marlar*, 368 Ark. 505, 247 S.W.3d 473; *see also* William L. Prosser, *Handbook on the Law of Torts* § 42, at 244 (4th ed.1971). If no duty of care is owed, summary judgment is appropriate. *Young*, 361 Ark. 209, 205 S.W.3d 741.

*Kowalski v. Rose Drugs of Dardanelle, Inc.*, 2011 Ark. 44, at 6–7, 378 S.W.3d 109, 114–15.

No duty of care exists unless there is such a retention of a right of supervision by the prime contractor that the independent contractor is not entirely free to do the work his own way. *See Williams*, *supra*. Tyson contends that here, as in *Williams*, because it did not have a right of supervision, the proper result was summary judgment entered in favor of the

owner. We agree. A review of the SSA makes it clear that Tyson had no duty to prevent injury to Henderson because the SSA clearly assigned those duties to PSSI.

PSSI was designated as an "independent contractor" that would perform in a manner "which it deems in its own best judgment to be suitable." PSSI agreed to determine the appropriate method for safely cleaning the equipment and would train its employees to do so. Also, it agreed to furnish the training, supervision, and control of the employees. It agreed to choose its own cleaning products and supplies and was obligated to furnish them, along with the labor and supervisors, to sanitize the equipment. PSSI was "solely responsible for supervising and directing all work performed by its employees and subcontractors at the Tyson facility."

None of those provisions relied upon by Henderson give rise to a duty on the part of Tyson to train or supervise PSSI employees or to otherwise protect them from sustaining injury. Even the certificate of safety compliance relied upon by Henderson makes it clear that PSSI "is solely responsible for supervising and directing all work performed by its employees," and would "ensure that its services are provided in a safe manner, and shall implement safety practices and procedures in order to prevent injuries to its employees."

We also agree that the portions of the SSA relied on by Henderson do not support that Tyson reserved control over the cleaning process or of the training of PSSI employees on safe cleaning methods. PSSI was free to "clean as it sees fit" under the SSA. Thus, Tyson retained no imputed liability with respect to cleaning and sanitizing the facility. Henderson failed to meet proof with proof and demonstrate an existence of a material issue of fact.

SLIP OPINION

IV. *Negligence*

The question of the duty, if any, owed a plaintiff alleging negligence is always one of law and never one for the jury. *DeHart v. Wal-Mart Stores, Inc.*, 328 Ark. 579, 946 S.W.2d 647 (1997). It is generally recognized that an employer of an independent contractor owes a common-law duty to the contractor's employees to exercise ordinary care for their safety and to warn against any hidden dangers or unusually hazardous conditions. *D.B. Griffin Warehouse, Inc. v. Sanders*, 349 Ark. 94, 76 S.W.3d 254 (2002). The duty of an employer of an independent contractor to use ordinary care or to warn of latent dangers does not contemplate a duty to warn of obvious hazards that are an integral part of the work the contractor was hired to perform. *Jackson v. Petit Jean Electric Co-op.*, 270 Ark. 506, 606 S.W.2d 66 (1980). However, the "obvious-danger rule" does not bar recovery when the invitee is forced, as a practical matter, to encounter a known or obvious risk in order to perform his job. *Carton v. Missouri Pacific Railroad Co.*, 303 Ark. 568, 798 S.W.2d 674 (1990).

*Culhane v. Oxford Ridge, LLC*, 2009 Ark. App. 734, at 4–5, 362 S.W.3d 325, 327–28.

Henderson maintains that the trial court also erred in determining that there was no question of material fact about whether Tyson failed to use ordinary care for her safety and owed a duty to her to warn about unreasonably unsafe conditions. She cites *D.B. Griffin Warehouse*, *supra*, for the proposition stated in *Williams*, *supra*, that an employer of an independent contractor owes a common-law duty to the contractor's employees to exercise ordinary care for their safety and to warn against any hidden dangers or unusually hazardous conditions.

Henderson cites an unpublished opinion that states that the "obvious-danger rule" does not bar recovery when the invitee is forced, as a practical matter, to encounter that danger in order to perform his job. *Merez v. Squire Court Ltd. P'ship.*, CA 02-82 (Ark. App.

Dec. 18, 2002) (unpublished).[1] She contends that washing floors and equipment need not be inherently dangerous. She claims that the power to a chicken machine can be turned off for cleaning, while the depth of a ten-foot ditch for a gas pipe cannot be turned off. *See Elkins v. Arkla, Inc.*, 312 Ark. 280, 849 S.W.2d 489 (1993) (where the Arkansas Supreme Court reversed a grant of summary judgment on the issue of whether Arkla was responsible for supervision under the contract and did not address the danger of the job, where an employee for a contractor died when a ten-foot-deep ditch collapsed on him while he was working). However, she argues that a crushing machine does not have to be a danger to the sanitizer if the employer and equipment owner take reasonable steps to look out for employees. She asserts that a "lock-out/tag-out" device now prevents the danger to which she was unreasonably exposed. She contends that she was forced to encounter Tyson's dangerous machinery to do her job. She contends that there is no exception to the rule holding Tyson liable where the danger is not an integral part of the work.

Tyson contends that summary judgment should be affirmed because the trial court correctly held that Tyson owed no duty to Henderson to warn of obvious hazards that are an integral part of the work that the independent contractor was hired to perform. *See Williams*, *supra* (the general rule is that the owner has a duty to exercise ordinary care and to warn in the event there are any unusually hazardous conditions existing which might affect the welfare of the employees). We agree. The duty to warn of latent dangers does not

---

[1]The citation of this unpublished opinion is in violation of Arkansas Supreme Court Rule 5–2(c) (2015), and holds no precedential value.

contemplate a duty to warn of obvious hazards which are an integral part of the work the contractor was hired to perform. *D.B. Griffin*, *supra*; *Crenshaw v. Ark. Warehouse, Inc.*, 2010 Ark. App. 612, 379 S.W.3d 515 (holding that, although skylights on the roof may have been hidden, the danger of falling through them was obvious in light of appellant roofer's knowledge that those skylights existed).

We affirm on this issue because there was no evidence presented of a hidden danger or an unusually dangerous condition. Henderson had been cleaning the equipment on which she was injured for a year. She had been trained by PSSI and knew the C.A.T. wheel was moving when she cleaned it. The dangers at issue were an integral part of her work; they were obvious, not hidden. *See Culhane*, *supra*.

Affirmed.

WHITEAKER and HOOFMAN, JJ., agree.

*Maximillan Sprinkle* and *Marion A. Humphrey*, for appellant.

*Munson, Rowlett, Moore & Boone, P.A.*, by: *Bruce Munson*, *Jane M. Yocum*, and *Ashleigh Phillips*, for appellee.