MIKE MURPHY, Judge
Appellant Donna Bennett is the personal representative of the estate of Leon Bennett. Leon Bennett was killed when the boom[1] of a crane broke, fell, and struck him while he was working on a construction site. Leon's estate brought a wrongful-death suit against Graves & Associates, the general contractor for the construction project. Graves moved for summary judgment, which was granted, and Bennett appealed. We agree with Bennett that summary judgment was inappropriate. Specifically, we hold that the circuit *530 court erred when it concluded that Graves owed no duty in tort to Leon in the circumstances this case presents, and we reverse and remand.
According to the complaint, Leon worked for Mobley Contractors, Inc. Mobley was a subcontractor hired by Graves to construct a bridge as part of a project for the Arkansas Highway and Transportation Department (now Arkansas Department of Transportation) (ADT) and for which Graves was the prime contractor. Mobley's task required crane work. On the date of the accident, Leon was working below the boom of a Mobley crane helping stage a concrete pile for use in the construction of the bridge. The Occupational Safety and Health Administration (OSHA) report indicated that some soil had settled under one of the crane's tracks and tilted the crane approximately ten inches, or three degrees, out of level.[2] When the operator lifted the concrete pile into position, the boom became side loaded,[3] with the center of the load about seven feet off the center of the boom. The boom sheared, broke, fell on Leon, and killed him.
After litigation ensued, Graves filed a third-party complaint against Mobley asserting that Mobley had overseen the crane operations and safety and had contracted to indemnify and hold Graves harmless for any claims arising out of Mobley's work on the job site. Graves and Bennett then filed competing motions for summary judgment, in part on whether Graves owed the deceased any duty of care. Graves argued that contractors have no duty to protect employees of subcontractors from "risks inherent in the jobs they are hired to perform" and thus could not be liable for Leon's death as a matter of tort law because Graves owed no duty to Leon. The circuit court granted Graves's motion for summary judgment in its entirety and denied Bennett's motion for summary judgment. It dismissed Bennett's complaint and Graves's third-party complaint. Bennett now appeals, arguing that Graves owed a duty of care to Leon because it assumed such a duty in its contract with the ADT.
Summary judgment is to be granted by a circuit court only when there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. Shook v. Love's Travel Stops & Country Stores, Inc. , 2017 Ark. App. 666, 536 S.W.3d 635. Because the underlying cause of action is based in negligence, the existence of a duty of care is crucial. Under Arkansas law, to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries. Id. Because the question of what duty is owed is one of law, we review it de novo. Id. If the court finds that no duty of care is owed, the negligence count is decided as a matter of law. Id.
When a prime contractor[4] has hired an independent contractor to perform work, the prime contractor has a duty to exercise ordinary care and to warn *531 if there are any unusually hazardous conditions existing that might affect the welfare of the employees. Constr. Advisors, Inc. v. Sherrell , 275 Ark. 183, 628 S.W.2d 309 (1982). In cases such as the one before us, when there is no demonstration of an exercise of actual control or violation of the duty to warn by the one engaging an independent contractor to perform work, we must turn to the contract to see if the prime contractor or owner retained the right of control or supervision and thus assumed an additional duty of care toward employees of the subcontractors doing the work. See, e.g. , Williams v. Nucor-Yamato Steel Co. , 318 Ark. 452, 454-55, 886 S.W.2d 586, 587 (1994).[5]
Construction Advisors , supra , and Williams , supra , are illustrative. In Construction Advisors , the appellants contracted with Baxter-Travenol Laboratories to build a plant. Construction Advisors, acting as either the prime or the general contractor, agreed to hire all contractors and subcontractors to do the work, agreed to have all supervisory responsibility over the work, and assumed "the specific duty of seeing that there was compliance with all safety laws and regulations." Constr. Advisors , 275 Ark. at 184, 628 S.W.2d at 310. Charles Sherrell, a subcontractor's employee, was hurt doing construction work and sued Construction Advisors, which argued it owed no duty to Sherrell because the subcontractor had agreed to comply with all safety codes. Rejecting the general contractor's attempt to shift all potential tort liability to the subcontractor as a matter of law, our supreme court wrote:
Here, Baxter-Travenol entered into a contract with Construction Advisors by which Construction Advisors undertook to supervise the construction and see that there was compliance with all safety laws and regulations. The safety codes are for the benefit of workers like Charles Sherrell and those workers were the third-party beneficiaries of the contract. Construction Advisors was liable to any worker injured as a result of its negligent failure to perform its contract. The fact that the subcontractor also agreed to comply with the safety codes does not absolve the prime contractor of liability.
Id. at 188, 628 S.W.2d at 312.
Compare this with Williams . There, Cache Valley Electric Company (a subcontractor) had been hired to do electrical work in the construction of a Nucor mill. During construction, Williams, an electrician for Cache Valley, died from electrocution while he was attempting to ground a fence near an electrical substation. 318 Ark. at 453, 886 S.W.2d at 586. Williams's personal representative brought a wrongful-death action against Nucor, and Nucor moved for summary judgment. The circuit court ruled in Nucor's favor because, in its contract with Cache Valley, Nucor retained no control over the work or authority to supervise the employees doing it. It was important to our supreme court that "the contract appear[ed] to have been drafted carefully to assure that all control and supervision other than priorities of projects remained with Cache and not with Nucor." Id. at 456, 886 S.W.2d at 588. In affirming, our supreme court wrote that
[i]t is not enough that [the employer] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make *532 suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be a retention of a right of supervision that the contractor is not entirely free to do the work his own way.
Id. at 455-56, 886 S.W.2d at 587 (citing Restatement (Second) of Torts § 414 cmt. C (1965) ).
On appeal, Bennett argues that Graves assumed a duty of care to employees of its subcontractors in the contract it had with the ADT. That contract incorporated standard specifications for highway construction and contained provisions that imposed duties on Graves to "comply with applicable Federal, State, and local laws governing safety" and to "provide safeguards ... and take any other action necessary to protect the life and health of employees on the project and the safety of the public ... in connection with the performance of the work covered by the Contract." Graves was required to "keep fully informed of all Federal and State laws, local laws, ordinances, and regulations" and "at all times observe and comply with all such laws, ordinances, regulations, quarantines, orders, and decrees." Consistent with these duties and to facilitate fulfilling them, Graves was required to employ "a competent superintendent or supervisor" who had "full authority to direct performance of the work in accordance with the contract requirements and is in charge of all construction operations (regardless of who performs the work)." Graves was to be "responsible for compliance by any subcontractor or lower tier subcontractor with these Required Contract Provisions."
Given these sweeping contractual provisions, we agree with Bennett that by this contract, Graves assumed liability to any worker injured because of its alleged negligent failure to perform its contract.
Graves argues that one section of the contract between it and the ADT warrants particular attention: section 107.14, which provides that
[i]t is specifically agreed between the parties executing the contract that it is not intended by any of the provisions of any part of the contract to create [in] the public or any member thereof a third party beneficiary thereunder, or to authorize anyone not a party to the contract to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of the contract.
Graves contends that this provision insulates it from any tort liability owed to the subcontractors' employees. We disagree; as in Construction Advisors , the duty issue does not turn solely on who the beneficiaries are and what duties might be owed to them specifically but what duties are imposed on, or assumed by, a prime contractor. Here, Graves contracted to comply with safety laws, provide safeguards, and protect the health and life of employees. It also retained a right of supervision. This imposed a duty in tort on Graves.
Graves next argues that the contract between it and the ADT does not control this case. Graves asserts that the contract to analyze is the one between it and Mobley. We are not persuaded for two reasons. First, because the contract between Graves and Mobley contained many of the same provisions as the one between Graves and the ADT regarding control of the job site and safety; and second, because our case law has not limited its review to just the contracts between the prime contractor and the subcontractor. See, e.g. , Constr. Advisors , supra ;
*533 Muskogee Bridge v. Stansell , 311 Ark. 113, 842 S.W.2d 15 (1992) (holding that a prime contractor had assumed a duty of care to the public through its contract with the Arkansas Highway Department despite the dangerous condition having been created by a subcontractor).
Graves asserts that we should not consider Muskogee Bridge persuasive authority. Graves contends that the critical difference between the current case and Muskogee Bridge is that in Muskogee Bridge , it was a member of the public who was injured and not a subcontractor's employee. Graves argues that a prime contractor is not liable for injuries sustained by subcontractor employees from "obvious hazards which are an integral part of the work the contractor was hired to perform." Graves's general recitation of the law is correct. See, e.g. , Jackson v. Petit Jean Elec. Coop. , 270 Ark. 506, 606 S.W.2d 66 (1980) (holding that an employer was not liable when an electrician was electrocuted and injured because electrocution is an obvious hazard integral to the job of electrical work). However, the current case does not fit into this framework for two reasons. First, as we have recited, the contract between Graves and the ADT specifically contemplates Graves's providing safeguards and taking actions to protect the life and health of employees on the project; and second, a crane arm shearing and falling on someone is not an obvious hazard integral to the job of building bridges. Cf. id.
Finally, Graves makes the following arguments in support of affirming: (1) it did not fail to provide any necessary safeguards or safety devices that caused or contributed to the accident and (2) it did not violate the specific OSHA regulations that apply to crane operations. These arguments, however, concern issues of proximate cause and breach and are thus more appropriate for a jury than for summary judgment. See, e.g. , Stacks v. Ark. Power & Light Co. , 299 Ark. 136, 771 S.W.2d 754 (1989). These arguments also overlook the main point that Graves can and did assume additional liability in its contract with the ADT. For these reasons we reverse and remand.
Reversed and remanded.
Abramson and Harrison, JJ., agree.

The horizontal arm supporting the hoist.

Later, an operator stated the manufacturer allows the crane to operate up to .9 degrees out of level.

Cranes are designed to lift loads centered under the hoist. Side loading occurs when a crane is attempting to lift any load that is not located directly under the hoist.

Usage note: the terms "prime contractor" and "general contractor" in this opinion are interchangeable and mean "[s]omeone who contracts for the completion of an entire project, including purchasing all materials, hiring and paying subcontractors, and coordinating all the work." Black's Law Dictionary 400 (10th ed. 2014).

In Williams , the contract the court reviewed was the one between the prime contractor and the subcontractor. In Construction Advisors , supra , and in Muskogee Bridge , infra , the contracts the courts looked to for guidance were ones between the prime contractor and the project owner/contractee.