Cite as 2026 Ark. App. 313

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CV-24-29

| | |
|---|---|
| ALFREDO MARTINEZ <br>      APPELLANT/CROSS-APPELLEE <br><br> V. <br><br><br> RELIABLE POULTRY, LLC, AND <br> RELIABLE POULTRY SUPPLY, INC. <br>      APPELLEES/CROSS-APPELLANTS | Opinion Delivered: May 20, 2026 <br><br> APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT <br> [NO. 72CV-22-1272] <br><br> HONORABLE DOUG MARTIN, JUDGE <br><br> AFFIRMED ON DIRECT APPEAL; DISMISSED AS MOOT ON CROSS-APPEAL |

**RAYMOND R. ABRAMSON, Judge**

This case is about the duty owed by a general contractor to the employees of a subcontractor. The circuit court found that no duty of care was owed by a general contractor to the subcontractor's employees and therefore granted summary judgment in favor of the general contractor. We affirm.

### I. *Background*

Reliable Poultry, LLC ("Reliable"), was hired by Jenny Nguyen as a general contractor to build poultry houses on a farm in Beech Bluff, Tennessee. Reliable subcontracted with A&L Hernandez Construction LLC ("A&L Hernandez") to frame the houses. Alfredo Martinez ("Martinez") was an employee of A&L Hernandez and a resident of Tennessee at the time relevant to this appeal.

On October 27, 2021, while he was working on the roof, Martinez fell when a piece of lumber he was standing on broke. He was not using any fall protection or safety harness and was paralyzed by the fall. Martinez applied for and received workers'-compensation benefits under Tennessee law and, pursuant to Tennessee law, received a workers'-compensation settlement of over $1 million.

On June 3, 2022, Martinez filed a lawsuit against Reliable Poultry Supply, Inc. ("RPSI"), in the Washington County Circuit Court. RPSI filed an answer stating that the entity "no longer operates any business, employs any employees, or construct[s] poultry houses."[1] Martinez soon added Reliable as a defendant.

Reliable first moved for summary judgment on April 18, 2023, arguing that Tennessee law applied to the dispute and that Martinez was barred from suing Reliable as the general contractor under the Tennessee workers'-compensation laws. The circuit court denied that motion for summary judgment with a blanket order on August 3.

Reliable moved for summary judgment again on August 18, 2023, arguing that it did not owe Martinez a duty of care. After a hearing, the circuit court granted the motion for summary judgment on October 24, holding that Reliable, as the general contractor, did not have a duty of care to Martinez, who was an employee of a subcontractor.

---

[1]RPSI was granted summary judgment because it presented facts that it had not been involved with Reliable's operation and because it had no involvement with the project involved in this lawsuit. Martinez made no showing at the summary-judgment stage that RPSI was a proper defendant, and he does not make any arguments on appeal that RPSI was improperly granted summary judgment. Therefore, the analysis in this opinion relates solely to Reliable.

Martinez filed a timely notice of appeal to challenge the October 24 order granting summary judgment. Reliable filed a timely notice of cross-appeal to challenge the August 3 order denying its first motion for summary judgment, though in the briefing and at oral argument, Reliable clearly stated that the cross-appeal was only to preserve an alternative ground for affirming the circuit court's summary-judgment order.

## II. *Analysis*

This court will affirm the grant of summary judgment when there are no genuine issues of material fact to be litigated. *Smith v. Hot Springs Prop. Mgmt. LLC*, 2025 Ark. App. 223, at 4, 712 S.W.3d 378, 380–81. On appellate review, this court determines if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* We review any issue of law de novo. *Id.*

The issues in this case revolve around the duty a general contractor owes to the employees of a subcontractor. Duty is a question of law.[2] *Hall*, 323 Ark. 143, 913 S.W.2d

---

[2]Martinez urges us to hold that a jury should be involved in determining what duty of care is owed. We decline his invitation because decades of precedent hold that duty is a question of law. *See, e.g.*, *Keck v. Am. Emp. Agency, Inc.*, 279 Ark. 294, 298, 652 S.W.2d 2, 4 (1983) ("The question of what duty is owed is always a question of law and never one for the jury."); *Hall v. Rental Mgmt., Inc.*, 323 Ark. 143, 913 S.W.2d 293 (1996); *Thornton v. Ark. Valley Elec. Coop. Corp.*, 95 Ark. App. 151, 155, 234 S.W.3d 915, 918 (2006).

293. If no duty of care is owed, the negligence claim is decided as a matter of law. *Rodriguez v. Chakka*, 2024 Ark. App. 224, at 3–4, 687 S.W.3d 592, 595.

## A. Direct Appeal

The caselaw could not be more clear that in Arkansas, a general contractor has only "the duty to exercise ordinary care" toward the employees of a subcontractor as well as "the duty to warn of unusually hazardous conditions that might affect the welfare of the subcontractor's employees." *Franklin v. Osca, Inc.*, 308 Ark. 409, 413, 825 S.W.2d 812, 815 (1992); *see also Gordon v. Matson*, 246 Ark. 533, 536, 439 S.W.2d 627, 629 (1969); *Jackson v. Petit Jean Elec. Coop.*, 270 Ark. 506, 508, 606 S.W.2d 66, 68 (1980); *Williams v. Nucor-Yamato Steel Co.*, 318 Ark. 452, 454–55, 886 S.W.2d 586, 587 (1994); *D.B. Griffin Warehouse, Inc. v. Sanders*, 349 Ark. 94, 105–06, 76 S.W.3d 254, 262 (2002); *Stoltze v. Ark. Valley Elec. Coop. Corp.*, 354 Ark. 601, 607–08, 127 S.W.3d 466, 470 (2003); *Culhane v. Oxford Ridge, LLC*, 2009 Ark. App. 734, at 4–5, 362 S.W.3d 325, 327–28; *Crenshaw v. Ark. Warehouse, Inc.*, 2010 Ark. App. 612, at 3–4, 379 S.W.3d 515, 517; *Henderson v. Tyson Foods, Inc.*, 2015 Ark. App. 542, at 3, 473 S.W.3d 52, 54; *Duran v. Sw. Ark. Elec. Coop. Corp.*, 2018 Ark. 33, at 5, 537 S.W.3d 722, 726; *Bennett v. Graves & Assocs., Inc.*, 2019 Ark. App. 99, at 3, 571 S.W.3d 528, 530–31.

Martinez does not argue that Reliable breached a duty of ordinary care or that Reliable failed to warn him about an unusually hazardous condition. Instead, his argument is that Reliable should face a heightened duty because it purportedly exercised control over

the worksite and because of contractual language referencing the Occupational Safety and Health Administration's regulations ("OSHA regulations").

### 1. *Control over job site*

Martinez's first argument is that Reliable assumed a heightened duty to the employees of A&L Hernandez by exercising control over the safety of the job site. He states that Reliable admitted it "controlled the safety of the job site" in certain circumstances and that Reliable actually exercised that control on several occasions. The undisputed material facts, however, show that Reliable did not exercise a degree of control that would heighten its duty of care.

First, the testimony Martinez relies on to prove that Reliable controlled the safety of the job site does not show control over A&L Hernandez employees or the normal course of their installation. Each time Reliable's supervisors were asked whether they controlled safety at the job site, they qualified their answers to note that they did not control whether the subcontractors performed their own jobs safely. This evidence indicates that Reliance did not control, for example, whether a framer should be required to wear fall protection and in what circumstances. There was uncontested testimony that Reliable did not control such a scenario.

Second, Martinez argues that Reliance imposed certain safety regulations at the job site by issuing memos to the subcontractors. Martinez argues that by doing this, Reliable "began to perform certain duties or activities and then negligently failed to perform [them] or performed [them] in a negligent manner." *Franklin*, 803 Ark. at 413, 825 S.W.2d at 815. We disagree.

5

To this point, there were three memoranda issued by Reliance to the subcontractors. The first stated that workplace injuries must be reported to the person's supervisor, and the supervisor must report those injuries on the day of the occurrence. The second stated that worksites should be kept free of trash and that alcohol was prohibited on the job site or "before going to a job site." The third stated that subcontractors should not use any trailers that are damaged or that were "not in order (safety chains, brakes, hitch latches, tires, lights, etc.)." These memos were all related to contractual provisions between Reliable and A&L Hernandez. For example, the contract stated that all construction debris should be cleaned up daily, that alcohol was prohibited from the job site, and that the subcontractor would be "held accountable for misuse of equipment and any repairs required as a result of misuse[,]" which would include Reliable's trailers.

Further, *Franklin*, upon which Martinez relies, is distinguishable from this case. In *Franklin*, the plaintiff passed out from heat exhaustion while cleaning a tank containing calcium chloride, and he sustained chemical burns. *Franklin*, 308 Ark. at 410, 825 S.W.2d at 813. Franklin was the employee of a subcontractor, and the defendant, Osca, was a general contractor that had been hired to clean out the tanks. Osca's on-site manager had told the subcontractor that calcium chloride is nonhazardous. Osca provided extensive instruction when the subcontractor was setting up and told the subcontractor that Osca had been having problems with heat and humidity and was providing Gatorade and ice water. The Osca shift leader said that they were "taking precautions" regarding people working in the tanks that day. After the plaintiff passed out, Osca attempted to remove him with a ladder, and when

6

that was unsuccessful, it had to retrieve a crane with a cherry picker from off site to get him out of the tank. Once the plaintiff was out of the tank, Osca employees removed his waders and slicker suit. There was expert testimony that "Osca's safety measures were appropriate except that it did not provide a way to get people out of the tank as rapidly as possible in cases of heat exhaustion." *Id.* at 414, 825 S.W.2d at 815. Further, the expert testified that the plaintiff's chemical burns "could have been prevented if all of Franklin's clothing had been removed, and his skin had been washed with water." *Id.*, 825 S.W.2d at 815. In its order granting summary judgment, the circuit court acknowledged "there are issues of genuine fact as they relate to the cherry picker availability and the removal of protective clothing." *Id.* at 415, 825 S.W.2d at 816. The supreme court held that these issues of fact were material because the resolution of the facts could result in Osca's liability.

In *Franklin*, the summary-judgment order itself recognized there were disputed material facts that could have shown the general contractor exercised control over the specific situation in which the plaintiff was injured and in ways that specifically affected the plaintiff. In this case, the instances that Martinez identifies as being examples of control are broad and are related to contractual obligations. They do not pertain to how the framers were doing their jobs or whether the framers were performing in compliance with any safety standard.

Martinez also attempts to argue that because Reliable could inspect the work performed by subcontractors, they had some duty to ensure that the site was safe. This argument is contradicted by our case law. *See, e.g., Henderson*, 2015 Ark. App. 542, 473 S.W.3d 52. In general, prime contractors can inspect the work to ensure that it meets the

7

specifications of the job. If this imposed additional safety duties on the prime contractor, then there would not be a litany of cases stating that general contractors only owe a duty of ordinary care to the employees of subcontractors. Instead, the caselaw would be replete with general contractors who became liable for safety violations of subcontractors when the general contractors had no actual authority or control over the subcontractors' employees or actions.

## 2. *Contractual obligations*

It is true that a contract can give rise to a heightened duty. The supreme court noted in *Elkins v. Arkla, Inc.*, that "the owner may retain the right and duty to supervise to the extent that it becomes responsible for injury resulting from negligence in performance of the work." 312 Ark. 280, 281, 849 S.W.2d 489, 490. *See also Bennett*, 2019 Ark. App. 99, 571 S.W.3d 528. In *Elkins*, the supreme court reversed summary judgment because there was an issue of fact as to whether a general contractor retained control over the subcontractor's employees through their contract.

However, the contract in *Elkins* is significantly different from the contract in this case. Here are some of the *Elkins* terms:

> Under section 1.09 C, an engineer or inspector, representing Arkla, is given authority "to require the removal of any employee of [subcontractor] who, in his opinion, is considered incompetent or not qualified to perform his work in a satisfactory manner." Section 1.15 B provides the engineer or inspector, when giving instructions "shall have authority to make minor changes in the work, not involving extra cost, and not inconsistent with the purposes of the work, . . ." Section 1.22 provides the contract may be terminated upon seven days notice if [subcontractor] "fails to supply enough properly skilled workmen or proper equipment and materials" or "persistently disregard laws, ordinances

8

or the instructions of the Engineer or Inspector." Section 1.39 provides "[t]he Engineer shall have direct supervision of Inspectors whose duty it shall be to see that the work is done properly and in accordance with the Contract Documents." Section 1.38 provides:

> The Engineer or Inspector shall have general supervision and direction of the work. He has authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the Contract. He shall also have authority to reject all work and materials which do not conform to the Contract.

312 Ark. at 282–83, 849 S.W.2d at 491.

In contrast, the contract between Reliable and A&L Hernandez states, "Reliable Poultry Supply will not be providing detailed instructions about when, where and how to get these jobs done. It is up to the contractor to make these decisions." It also states, "Reliable Poultry Supply is in no way responsible for the contactor's hiring, supervising, or paying assistants." The contract further states, "It is the responsibility of the sub-contractor to provide its employees with any necessary safety equipment in order to perform their work in a safe manner. All work will be performed with OSHA safety standards considered." Also unlike *Elkins*, the contract states, "After a contract has been entered into, Reliable Poultry Supply may not 'fire' a contractor as long as they produce results, which measure up to their contract specifications."

Martinez also relies on *Bennett*, 2019 Ark. App. 99, 571 S.W.3d 528. In *Bennett*, , a worker died on a construction site when the boom of a crane broke and struck him. This court reversed the grant of summary judgment, holding that the general contractor assumed an additional duty of care to the subcontractor's employees when it retained the right of

9

control and supervision in the contract. The employee in *Bennett* had been working on a Department of Transportation ("ADT") project, and the contract between ADT and the general contractor contained "[s]weeping contractual provisions" that "assumed liability to any worker injured because of its alleged negligent failure to perform its contract." *Id.* at 6, 571 S.W.3d at 532. Many of those same provisions were included in the contract between the general contractor and the subcontractor in *Bennett. Id.* at 7, 571 S.W.3d at 533.

Reliable, in contrast, did not assume any liabilities toward workers or subcontractors in the contract it signed with the owner of the chicken houses. Nor were there any such assumptions of a duty in the contract between Reliable and A&L Hernandez.

The contract at issue in *Henderson*, 2015 Ark. App. 542, 473 S.W.3d 52, is instructive here. In *Henderson*, this court held that an owner was not subject to a heightened duty toward employees of a subcontractor despite contractual language that retained more rights than the contract here. In *Henderson*, for example, the contract stated that the subcontractor had "to provide a certificate of safety compliance" and submit to "daily inspection by [the owner]." *Id.* at 6–7, 473 S.W.3d at 56–57. It also stated that the work had to be performed "in a manner 'meeting all regulatory agency and [owner] sanitation standards, safety,' and more, including the facility's [standard safety operating procedures]." *Id.* Despite these provisions, we held "that the trial court properly found that [the owner] owed no duty to [the plaintiff] because [the owner] did not maintain control over the training or supervision of [the subcontractor's] employees." *Id.* at 8, 473 S.W.3d at 57.

Importantly, "No duty of care exists unless there is such a retention of a right of supervision by the prime contractor that the independent contractor is not entirely free to do the work his own way." *Id.* at 8, 473 S.W.3d at 58. The undisputed material facts in this case show that A&L Hernandez was entirely free to do the work its own way. The contract specifically stated that A&L Hernandez was responsible for safety training and equipment for its employees.

Martinez urges us to find that the statement about OSHA regulations in the contract created a duty for Reliable to ensure that employees of A&L Hernandez followed all OSHA regulations. The full clause in the contract states: "It is the responsibility of the sub-contractor to provide its employees with any necessary safety equipment in order to perform their work in a safe manner. All work will be performed with OSHA safety standards considered."

This clause clearly meant that A&L Hernandez should consider OSHA safety standards in performing the work; it does not say that Reliable agrees to enforce OSHA safety standards on A&L Hernandez employees. Further, in *Henderson*, the contract required that the subcontractor follow Tyson rules, regulations, and specific facility safety operational policies. The contract in this case does not go nearly that far and states only that the work "will be performed with OSHA safety standards considered."

There is no ambiguity in the contract between Reliable and A&L Hernandez that gives rise to a disputed material fact.

### 3. *Duty framework*

11

In his final argument, Martinez encourages this court to "revisit" the way duty is determined. He posits that the current cases consider the categories of the actors to determine what duty is owed but that an "analytical approach" would be more suitable. In that approach, a court would consider the relationship between the parties and the foreseeability of the harm.

As noted above, there is a litany of cases holding that a general contractor has no duty beyond ordinary care toward the employees of a subcontractor. Many of those are supreme court cases, which this court cannot overrule. *Breckenridge v. Ashley*, 55 Ark. App. 242, 246, 934 S.W.2d 536, 538 (1996).

Under the current caselaw and the undisputed material facts, Reliable did not assume a heightened duty toward the employees of A&L Hernandez, and we affirm the circuit court's summary-judgment order.

## B. Cross-Appeal

This lawsuit would be barred under Tennessee's workers'-compensation laws. While both Arkansas and Tennessee have statutes regarding exclusive remedies for injuries on the job, the Tennessee statute is more restrictive. In Arkansas, the employee of a subcontractor is barred from suing the general contractor only if the general contractor paid workers'-compensation benefits to the injured party. *See Stapleton v. M.D. Limbaugh Constr. Co.*, 333 Ark. 381, 969 S.W.2d 648 (1998). On the other hand, the exclusive-remedy provision in Tennessee immunizes both the subcontractor and the general contractor as long as workers'

compensation insurance was provided by *either* of them. *See* Tenn. Code Ann. § 50-6-108; *Scott v. AMEC Kamtech, Inc.*, 583 F. Supp. 2d 912 (E.D. Tenn. 2008).

Reliable filed a motion for summary judgment arguing that Tennessee law applies to the substantive questions in this lawsuit. That motion was denied on August 3, 2023. In the summary-judgment order on direct appeal, the circuit court reiterated that Arkansas law applies to the controversy.

Reliable cross-appealed the August 3, 2023 order denying summary judgment. In its briefing and at oral argument, Reliable stated this was done out of an abundance of caution and that it is presenting the conflict-of-law arguments solely as an alternative ground for affirming the summary-judgment order that is the subject of the direct appeal.

 "A case is moot when any judgment rendered would not have any practical legal effect upon a then existing legal controversy." *Ark. Dep't of Hum. Servs. v. Ledgerwood*, 2019 Ark. 100, at 2, 571 S.W.3d 1, 2. Because we affirm on appeal, and the conflict-of-law issues are presented only as alternative bases for affirming, we dismiss the cross-appeal as moot.

Affirmed on direct appeal; dismissed as moot on cross-appeal.

MURPHY and BROWN, JJ., agree.

*Daniels Law Firm*, by: *Shawn B. Daniels*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant/cross-appellee.

*Friday, Eldredge & Clark, LLP*, by: *Kimberly D. Young* and *Clifford W. Plunkett*; and *The Law Group of Northwest Arkansas PLLC*, by: *Kristy E. Boehler*, for appellees/cross-appellants.